## Samuel Summerville, et al., v. Penn Drilling Company.

1.  ERRORS—*when deemed waived.* Errors assigned but not argued are deemed waived.

2.  WAIVER—*when evidence competent to show.* Where a waiver is claimed, evidence of prior like transactions showing the course of dealing between the parties, is competent.

3.  OBJECTION—*effect of, where general.* A general objection will not preserve an error in the admission of evidence proper upon any ground.

4.  OBJECTION—*when cannot be availed of.* Where counsel have not insisted upon a ruling upon an objection and the court has not refused to rule, no error can be successfully urged.

5.  EVIDENCE—*when admission of, cannot be complained of.* The

admission of evidence not objected to and not sought to be excluded by motion cannot be complained of on appeal.

6. VARIANCE—*cannot be first raised on appeal.* The objection of a variance cannot be first raised on appeal.

7. ADMISSIONS—*when binding upon others than the party making them.* Where parties are cooperating in a joint enterprise the admissions of one of such parties are binding upon the others.

8. AMENDMENT—*when imposition of terms proper.* The requiring by the court that a party seeking to amend be required to pay one-half of the costs, held, not an abuse of discretion.

9. VERDICT—*what essential to warrant setting aside, as against the evidence.* To warrant the Appellate Court in setting aside a verdict as against the preponderance of the evidence, it must be so manifestly against the weight of the evidence as to make it apparent to the court that it was not the result of the impartial and honest judgment of the jury but that it must have resulted from mistake or from partiality, prejudice, passion or some improper motive or condition.

Action of assumpsit. Appeal from the Circuit Court of Washington County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

J. A. WATTS, for appellants.

W. F. BUNDY and FRANK F. NOLEMAN, for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in assumpsit, by appellees against appellants, in the Circuit Court of Washington county, to recover for services performed under a contract for drilling a prospect hole, for coal. Trial by jury. Verdict and judgment in favor of appellees for $452, the amount of the verdict, and that each party pay one half the costs.

The contract upon which the suit is based is as follows: "This agreement entered into this 30th day of January, 1903, between C. O. Wilson and J. W. Sweeting, co-partners, doing business under the firm name of Penn Drilling Company of Cairo, Illinois, parties of the first part, and Sam Summerville, J. T. Armstrong, Wm. Rixman and F. M. Vernor, parties of the second part, witnesseth: That,

for and in consideration of the sum of $2 per foot to be paid to the first parties by second parties, the said first parties agree to drill for second parties a hole to a depth of 550 feet, unless ordered to stop by second parties before that depth is reached, and hole to be located where the first parties now have their drill stationed, at Irvington, Washington county, Illinois, drilling to be done with a diamond drill, the core taken out of said hole to be preserved by said first parties. The first parties agree to commence work on said hole at once, and to continue without delay, unless stopped by death or sickness, until the said hole is completed to a depth of 550 feet or until ordered to stop work by second parties. The said first parties further agree that in case second parties desire the hole drilled deeper than 550 feet, they will continue to drill for $2 per foot until stopped by second parties provided hole shall not be drilled deeper than 650 feet. The second parties agree to furnish all water necessary for said drilling. The said sum of $2 per foot to be paid first parties by second parties when said hole is completed to a depth of 550 feet or when the work is ordered stopped by second parties, if stopped before the 550 feet is reached. The first parties agree not to employ any one about said drill who is in any way objectionable to second parties, and no one to be allowed about said drill except the parties to this contract, and first parties agree to give out no information concerning said drilling to any one except second parties. Signed in duplicate the day and date first above written."

Appellees, plaintiffs below, are C. O. Wilson and J. W. Sweeting, partners, doing business under the firm name and style of Penn Drilling Company. Appellants, defendants below, are Samuel Summerville, J. T. Armstrong, William Rixman and F. M. Vernor, who were acting and cooperating together in the common purpose of procuring the work specified in the contract to be performed. The declaration consists of three special counts and the common counts. In the special counts as originally drawn the contract is set up, in legal effect, in substance, and in *haec verba*, re-

Summerville v. Penn Drilling Co.

spectively; and performance and breach is averred in each. During the progress of the trial, leave was obtained to amend the third count, and as abstracted by appellant's counsel it was amended as follows: "By striking out the averment, 'And then and there took out the core from said hole and preserved the same for said defendants,' and in place thereof inserted the following, 'And then and there were ready and willing and offered to take out the core from said hole and preserve the same for the defendants, but the defendants then and there waived the preservation of said core, until said hole had reached the depth of, to-wit: four hundred feet,' with proper averments as to performance of other conditions of the contract." The defendant pleaded the general issue.

While there are four errors assigned upon the record and disclosed in the abstract only two of them, the first and third, are brought forward into the brief and argument. These are, "1st: The Court erred in admitting improper evidence on behalf of plaintiffs," and, "3rd: The Court erred in overruling motion for new trial and entering judgment against defendants."

Errors assigned upon the record by appellant, but not noticed in his brief and argument, must be treated as waived or abandoned. Illinois Cyclopedic Digest, Vol. 1, page 411, Col. 2.

Appellants were prospecting for coal in the vicinity of Irvington, Illinois. Shortly prior to the making of the contract out of which the controversy in the case at bar arises, appellees had sunk two holes for appellants in the immediate vicinity of the one in controversy here. One of these, the first one, was sunk to a depth of 420 feet, the core was preserved, in a core box, and delivered to one of appellants. At this depth a piece of steel was accidentally dropped in the hole and the work upon it had to be abandoned. For this work, appellees under their contract, were not entitled to any compensation and did not receive any. The second hole was sunk to the depth of 216 feet, when for some cause it had to be abandoned. The core

from it was not preserved. Upon the abandonment of the second hole appellants and appellees had a settlement in which appellees were paid for sinking the second hole, and the contract for sinking the third hole was entered into, the one now under consideration. The second hole was sunk about 50 feet from the first, and the third one about 125 feet from the second. The contract for sinking the third hole was entered into on the 30th day of January, 1903, and the evidence tends to prove that appellees commenced on that day to move their "rig," and prosecuted the work as rapidly as was practicable, working a portion of the time, from five o'clock in the morning, until eight or nine o'clock at night, and by February 20 had reached a depth of 226 feet. During this time they lost two days, because it was so cold it would freeze the water so they could not run the drill; that at this depth they struck a caving formation that would come in and fill up the hole, so they could not work without casing it up. To effect this it was necessary to take out the pipe they had been using and ream it down the 226 feet in order to put in a larger pipe; that from February 20 to March 5 was consumed in procuring, fitting and adjusting the necessary tools and appliances; that it was necessary to procure a reamer and when this arrived it could not be fitted and adjusted to do the work, and had to be returned to the manufacturer and exchanged for another; that during this time appellees kept their foreman and force of workmen in camp on the ground ready to proceed, and were exercising all reasonable diligence to procure and adjust the necessary appliances. A portion of this delay resulted from a mistake of the manufacturer, as to the proper size of the reamer; that on the morning of March 5, the engines were in operation and the foreman and men and appliances all in place ready to progress with the work, when appellants ordered the men in charge to stop work, which they immediately did, and telegraphed the fact to appellee Wilson, the general superintendent for appellees; that Wilson had been at home sick for the two preceding days; that his wife was also sick and

he was preparing on that day to take her to a hospital for treatment.

The evidence also tends to prove that after the making of the contract and as the work progressed appellees took out the core and would have preserved it for appellants as they had done while sinking the first hole, but for the fact that appellants informed them that as they had the core from the first hole they need not save it until they had reached a depth below that of the first hole. Upon this issue Mr. Wilson testified: "The matter of preserving the core was talked of that day, * * * after the contract was signed, and it was agreed it was not necessary to save the core, * * * as they had the core 400 feet, and it was agreed not to save the core until after we reached a depth of 400 feet and so the work proceeded. Mr. Summerville came there a number of times and I had the core in the box and asked Summerville if he wanted the core preserved and he said, 'No, throw it away where nobody will get it.' That was while we were working on third hole. I took it down myself and threw it in the pond. We took the core out and laid it in a small core box just to fit the core and we put it in rotation to show it in layers as we came to it. I showed it to Mr. Summerville. He said to throw it away as they had the core and did not need it, down to 400 feet." This witness is corroborated by certain facts and circumstances and by the testimony of two other witnesses. It may be noted here that all the foregoing is denied, and that there is a direct conflict in the evidence upon every feature of the controlling issues of fact involved in the case.

Counsel insist that the trial court committed reversible error in admitting in evidence the fact that appellees had sunk two holes for appellants prior to the one in direct controversy here, and that the core had been saved from the first and not from the second.

We are of opinion that this evidence tended to corroborate appellees' evidence in support of their claim that appellants had "waived the preservation of the core." The

objection to this evidence was general, and in such case if any part of the evidence is proper for any purpose such objection should be overruled.

Counsel further insists that the trial court erred in admitting "evidence of the sickness of Wilson and his wife, of a mistake by parties in Chicago as to the size of a reamer, as an excuse for failure to 'continue the work without delay unless stopped by death or sickness.'" This objection is based upon the rule that "where performance of a contract is alleged, evidence of excuse for non-performance is inadmissible."

There was no objection interposed to the evidence as to the sickness of Wilson, nor any motion to exclude it. Nor does the evidence tend to prove that the work was delayed on account of the sickness or absence of Wilson. His return to the place of the work was delayed, but not the work. Wilson's sickness was on March 3 and 4. The reamer did not arrive until the 4th and the men were there ready to receive it and were in the act of going to work on the morning of the 5th, when they were stopped. The evidence as to the sickness of Wilson's wife did not refer in any way to the continuation of the work or any delay in prosecuting the same. It simply explains why Wilson was not there in person on the day the work was stopped and why he did not reach there sooner after he received word that it had been stopped.

Concerning the mistake in the size of the reamer the state of the record is, that during Wilson's testimony he said: "It was necessary to take out the pipe we had been using and ream down the 226 feet in order to put in the three and one-half inch pipe. I have the bit that goes on——." At this point counsel for appellants said: "Objected to,—following this any further." The objection was overruled, and counsel excepted. Thereupon another question was propounded to the witness and he responded substantially as abstracted: "This is the bit that the diamonds set in. I ordered this reamer to go inside of a three and one-half pipe. In order to cut the hole to make this clear-

Summerville v. Penn Drilling Co.

ance we must set these diamonds on the outside edge and also on the inside. When Chanault started to set the diamonds I see here, he discovered it wouldn't go down in this pipe so he wired me. I ordered a reamer to go down in a three and one-half inch pipe. It was a mistake of the Chicago people. I went there and they agreed to give me another one." To this no objection was interposed and no motion was made to exclude it. The objection that was made, was to a wholly unimportant feature of the subject, and was so general as to afford no light either to the court or opposing counsel. The witness Chanault, while testifying concerning his effort to use the reamer, stated that "he took it to Centralia to get it cut down." And was asked, "What did you find there?" To this a general objection was interposed. The court did not rule upon the objection, and the record does not disclose that the court was asked to do so. To avail of an objection, counsel must insist upon a ruling of the trial court upon his objection and must either obtain a ruling, or a refusal of the court to rule. Mere failure to rule is not sufficient. In such case the presumption is that the court either did not hear the objection or that counsel waived his right to have a ruling upon it. If counsel's objections were well taken, the state of this record is such that he cannot avail of them here, but we are of opinion that all the evidence about the reamer, the attempt to use it, the attempt to fix it so it could be used, and finally the procurement of another one that could be used in its stead, was relevant and competent. Not for the purpose of furnishing an excuse for "failure to 'continue the work without delay, unless stopped by death or sickness,' " but as proper evidence tending to prove that they were in fact all the time actually and diligently continuing the work according to the terms of their contract. When they were camping on the ground, contending with a "cave in," for which they were not to blame, and making every reasonable effort to procure and adjust proper appliances with which to overcome it, they were "continuing to work," just as truly, within the fair meaning of

the terms of their contract, as if there had been no cave in, and the wheels had continued to "go round," without interruption.

Counsel in his reply brief insists that if the admission of this evidence was not error, then there is a variance, and for that reason demands a reversal. In our opinion there is no variance. As we interpret the contract, and understand the evidence, the evidence tended to prove the case as laid in the declaration. If, however, a variance could now be pointed out, the state of the record is such that it could not be availed of here. "An objection of variance between the plaintiff's allegations and the proof introduced, cannot be urged on appeal where it was not made in the trial court." Ehlen v. O'Donnell, 205 Ill. 38. "In order to avail of a material variance between the allegations and proofs, the testimony must be specifically objected to at the time it is offered and the variance pointed out." Illinois Life Assn. v. Wells, 200 Ill. 445. "An objection to the admission of evidence on the ground of variance is waived unless the objection is specifically made and the ground thereof pointed out in the trial court." Traders Mutual Life Insurance Co. v. Johnson, 200 Ill. 359.

It is further insisted by counsel that the trial court erred in admitting evidence as to what any one or more of appellants did or said at any time or times in the absence of any or all the others. This position is based upon the theory that appellants were simply joint obligors, without being in any sense copartners. What their true relation, among themselves, was, is not shown by any direct evidence, but the evidence does show that they were acting and co-operating together in carrying forward a business enterprise. They had made contracts concerning the same subject-matter before the one in controversy here, they purposed making other contracts in the future for the sinking of a shaft, and presumably for the mining of coal and they acted like partners and conducted themselves and the enterprise in hand, as partners engaged in such business usually do. It is true they had not adopted a firm name, or if they

had they did not employ it in connection with their business so far as the record shows, but this is wholly unnecessary to the existence of a copartnership or to establish them as partners. Whatever their true relation may have been, as between themselves, appellees dealt with them as though they were partners, and in our judgment, were warranted, both in law and in fact, in doing so, as was also the court and jury that tried the case below. Even if they were but joint obligors, and in no sense partners, it was not error to admit the evidence complained of, under the circumstances of this case, and the state of record before us.

Finally, it is insisted that this case ought to be reversed, because the trial court only taxed one-half the costs against appellees as a condition of the exercise of their statutory right to amend their declaration. Upon this feature of the record appellees assign cross-errors. The matter of imposing terms, in such case, rests in the sound discretion of the trial court, and we do not perceive such abuse of that discretion here, as to warrant us in disturbing the judgment on that ground.

As this case was tried in the Circuit Court, there were only three questions raised and they were as to whether appellees had violated their contract by failing to continue the work; whether appellants had "waived the preserving of the core," and whether appellants had "stopped the work." These were, as the case stood at the close of the evidence, all questions of fact for the jury. "A verdict will not be set aside and a new trial granted where there is contrariety of evidence, if the evidence and facts and circumstances proven, by fair and reasonable intendment, will authorize a verdict, notwithstanding it may appear to us to be against the strength and weight of the evidence." To warrant a court in setting aside a verdict in such state of case, "the verdict must be so manifestly against the weight of the evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, or from partiality, prejudice, passion, or some im-

proper motive or condition." St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40.

We find no reversible error in the record. The judgment of the Circuit Court in affirmed.

*Affirmed.*