JOHN E. KAVANAGH *et al.* Plaintiffs in Error, *vs.* THE BANK OF AMERICA *et al.* Defendants in Error.

*Opinion filed April 23, 1909.*

1. APPEALS AND ERRORS—*right of appeal from order disbursing assets in receivership.* Where a receiver for a corporation is appointed under a bill filed by a stockholder the latter is entitled to appeal from an order disbursing assets which adversely affects his interest as a stockholder; but the receiver, as the representative of the estate and all persons interested in it, is also entitled to appeal if the order is antagonistic to the interests he represents.

2. BILLS AND NOTES—*only bad faith will defeat title of endorsee of commercial paper.* Only bad faith will defeat the title of the endorsee of commercial paper taken before maturity, for value and without knowledge of any defenses thereto; and mere suspicion, the knowledge of circumstances calculated to excite suspicion, or even negligence of the endorsee in acquiring the paper, will not defeat his title.

3. SAME—*a certificate of deposit in a bank is negotiable as a promissory note.* A certificate of deposit issued by a bank to a

named person, reciting that he has deposited in such bank a certain sum payable in current funds at a certain time, with a specified rate of interest, upon return of the certificate properly endorsed, is in legal effect a negotiable promissory note, and the possession thereof, duly endorsed with the depositor's name, is evidence of the possessor's title.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

DARROW, MASTERS & WILSON, and DAVID K. TONE, for plaintiffs in error.

BULKLEY, GRAY & MORE, (C. PAUL TALLMADGE, of counsel,) for defendant in error Alberta S. Eagan.

Mr. JUSTICE DUNN delivered the opinion of the court:

On January 13, 1906, the Bank of America issued to F. M. Creelman three certificates of deposit in the following form:

"BANK OF AMERICA,            No. 14.
         CHICAGO, *Jan. 13, 1906.*      $500.
"F. M. Creelman has deposited in this bank five hundred dollars, payable in current funds five months from date, with interest at the rate of three per cent per annum on return of this certificate properly endorsed.       R. H. HOWE, *A. Cashier.*
Countersigned: C. A. SAWTELLE, *Teller.*"

Creelman endorsed the certificates and delivered them to the defendant in error Alberta S. Eagan in exchange for his note for $1500 which she held. On February 15, 1906, John E. Kavanagh filed a bill against the bank and its stockholders and officers, under which Daniel D. Healy was appointed receiver of the bank and the court proceeded to administer the assets. Alberta S. Eagan filed an intervening petition for an order directing the receiver to pay the amount of the certificates to her, and after a hearing such an order was made. Kavanagh, the complainant in

the original bill, and Healy, the receiver, each appealed to the Appellate Court, which dismissed Healy's appeal and on Kavanagh's appeal affirmed the decree. Each has sued out a writ of error and the causes have been consolidated.

The complainant had a right to appeal because he was a party and the decree affected adversely his interest as a stockholder. The receiver had a right to appeal because he represents the entire estate and all persons interested in it, and it is his duty to defend the estate in his possession against all claims which are antagonistic to the right of the parties to the suit, and, if necessary for such defense, to appeal. (*Booworth* v. *Terminal Railroad Ass.* 174 U. S. 182.) The appeal of the receiver was therefore improperly dismissed.

It is contended on behalf of the plaintiffs in error that the certificates were fraudulently issued without any consideration, as the result of a conspiracy between the officers of the bank, Creelman and William H. Eagan, the husband of the petitioner; that they were never endorsed to her; that they were not negotiable instruments, and that the evidence does not show that she is a purchaser in good faith in the usual course of business, before maturity and without notice.

The Bank of America began business December 5, 1905. F. E. Creelman was a director. On December 11, 1905, F. M. Creelman owed the Jackson Trust and Savings Bank, of which William H. Eagan was president, $23,000, and he and F. E. Creelman, his father, owed the same bank $60,700, and F. M. Creelman was also liable, as endorser, for $38,316.46. The Creelmans were the owners or very largely interested in a great number of corporations connected in some way with the lumber trade, and their business reached into several States. They did business with many banks, borrowed money freely, discounted much paper, and they, as well as some of their corporations, were in good credit and rated so in the commercial reports. The

liability of F. M. Creelman as endorser, above mentioned, arose out of his endorsement and discounting of paper of the various corporations owned or controlled by him and his father, and the amount of it varied from day to day. On August 29, 1905, the Creelmans had assumed an indebtedness to the Jackson Trust and Savings Bank which had been originally incurred by the Krotz Manufacturing Company, and amounted, at the time of its assumption by the Creelmans, to $53,077.50. For this debt the bank held as collateral security $70,000 of Latannier bonds and $35,-000 of Avoyelles bonds and subsequently got $40,000 more of Latannier bonds. This indebtedness constituted the $60,700 which F. E. Creelman and F. M. Creelman owed the Jackson Trust and Savings Bank on December 11, 1905. In the month of November, 1905, the board of directors of the Jackson Trust and Savings Bank considered and discussed the excessive amount of the Creelman loan. The security was considered ample. The bills of the different companies discounted on F. M. Creelman's endorsements were individually comparatively small though aggregating many thousand dollars, but it was thought that the Krotz paper, being the $60,700 loan, was excessive in amount and should be reduced. The bank having agreed that a commission which had been paid the bank should be refunded if the loan was taken up by January 15, at various times portions of the Latannier and Avoyelles bonds were taken up and payments were made on the indebtedness. Part of the bonds were disposed of through Whitmer & Sons, of Philadelphia, but the larger part were sold to the Bank of Amercia and certificates of deposit issued therefor. It is claimed that the facts show a conspiracy on the part of the Creelmans and the Jackson Trust and Savings Bank and its officers to unload worthless securities upon the Bank of America, and on the part of the Bank of America and its officers to secure money from the bank on worthless securities; that William H. Eagan was a party to the con-

spiracy and acted for his wife, Alberta S. Eagan, and that she is therefore bound by his acts and his knowledge.

Whatever irregularities may have been practiced by the officers and directors of the Bank of America, there is nothing in the evidence justifying the charge of conspiracy to impose upon that bank against the Jackson Trust and Savings Bank or Mr. Eagan, its president. The transfer of the securities, the Latannier and Avoyelles bonds, which is made the basis of the charge, was conducted entirely by the Creelmans with the Bank of America, acting on their own initiative and according to their own plan. Though F. E. Creelman may have used his position as a director of the bank to secure financial advantages to which he was not entitled and though the officers of the bank may have been reckless in their dealings with him, yet the Jackson Trust and Savings Bank was not a party to such transactions and the evidence in this record does not charge it with knowledge of them. Only bad faith will defeat the title of the endorsee of commercial paper taken before maturity, for value and without knowledge of any defense thereto. Mere suspicion, the knowledge of circumstances calculated to excite suspicion, or even gross negligence of the endorsee in acquiring the paper, will not defeat his title. (*Bradwell* v. *Pryor,* 221 Ill. 602.) No statement was made by Eagan, the president, Lawton, the cashier, or any other officer of the Jackson Trust and Savings Bank, to anyone connected with the Bank of America, in regard to these bonds. The Jackson Trust and Savings Bank wanted the loan reduced because of its excessive amount, but it "unloaded" or "dumped" the securities on the Bank of America only by insisting that the Creelmans should reduce the loan, and thus compelling them to transfer these securities to some other institution where they could use them. The price paid for them was not a material question. That question was determined between the Creelmans and the Bank of America without any interference or suggestion

by the Jackson Trust and Savings Bank or its officers. The receiver of the Bank of America has been unable to realize the price paid for the bonds, but the record contains no evidence of any misrepresentation by anybody as to their value. It is true that two of the officers or employees of the Bank of America protested against the purchase of the bonds and issuing the certificates therefor, but their objection was not based on the character of the transaction or the value of the bonds, but on the fact that the bank could not spare the money for the purchase of bonds.

The certificates in this case, however, were not given for bonds. Mention of that subject is made only on account of the claim that the evidence shows a conspiracy to defraud the Bank of America, of which the issue of these certificates was a part and of which the defendant in error is charged with notice. These certificates were issued as a loan to F. M. Creelman. He gave his check for $1500 for them and it was charged to his account. Mr. Howe, the assistant cashier of the Bank of America, testified that at the time the certificates were drawn F. M. Creelman's account was overdrawn $112.03; that he gave a check; that after they were delivered, at the close of banking business on that day Mr. Creelman's account was overdrawn $1612.03, and that the certificates were delivered at three or four o'clock on the day of their date. At the close of the next banking day, the 14th being Sunday, Mr. Creelman's account showed a credit balance, but some of the items were returned and went to protest. On the next day, however, his account was overdrawn only $111.94. His $1500 check therefore paid for these certificates of deposit and they were valid in his hands.

It is insisted that the certificates are not negotiable instruments assignable by endorsement so as to convey the legal title to the endorsee because they are not payable to a person named therein, as required by section 4 of chapter 98 of the Revised Statutes. The instruments contain

an express promise to pay the money in three, four and five months after date, respectively. Each acknowledges the receipt of the money from F. M. Creelman and states that it is payable on return of the certificate properly endorsed. The legal effect of each is a promise to pay to F. M. Creelman, who is named in the instrument. They are, in effect, promissory notes and negotiable under the statute. (*Bank of Peru* v. *Farnsworth,* 18 Ill. 563.) They were endorsed by the payee and delivered to the defendant in error in exchange for the note she held. Their possession by her, so endorsed, was evidence of her title to them. She had no knowledge whatever of the transaction, which was conducted entirely by her husband. He testified that he had no knowledge of the transaction by which the certificate was obtained, and is not contradicted in any way. Even if the instruments had been invalid in the hands of the payee, there was no defense to them as against the defendant in error.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*