SECOND DISTRICT—MARCH, 1912.    405

Crawford L. & Car Co. v. Galesburg M. Cast. Co., 168 Ill. App. 405.

Crawford Locomotive & Car Company, Appellee, v.
Galesburg Malleable Castings Company, Appellant.

Gen. No. 5589.

1. SALES—*what not waiver of right of inspection.* Neither an
inspection and approval of patterns for castings nor a waiver of the
right of inspection at the place of manufacture is a waiver of the
right of inspection at the place of delivery.

2. APPEALS AND ERRORS—*when assignments waived.* Assignments
of error not argued are deemed to have been waived.

Appeal from the Circuit Court of Knox county; the Hon. R. J.
GRIER, Judge, presiding. Heard in this court at the October term,
1911. Affirmed. Opinion filed March 13, 1912.

WILLIAMS, LAWRENCE, WELSH & GREEN and F. O. Mc-
FARLAND, for appellant.

LUCEY & LARKIN and HARDY, WELSH & HARDY, for ap-
pellee.

MR. JUSTICE WILLIS delivered the opinion of the
court.

In 1908 the Crawford Locomotive & Car Company
of Streator, Illinois, appellee here, was engaged in the
business of repairing and rebuilding railroad cars,
in which process certain malleable iron castings were
used. In June of that year after some preliminary ne-
gotiations, appellee placed with the Galesburg Mal-
leable Castings Company, appellant here, an order
for a large number of such malleable iron castings,
which were to be used in the repair or re-building of
certain cars of the Atchison, Topeka & Santa Fe Rail-
way Company. By this order or contract, appellant
was to begin delivery of the castings on December
10th, and to complete the delivery by December 30,
in the same year. Appellant did not comply with its
agreement with regard to the time when delivery was

to commence and there was considerable correspondence between the parties, consisting mostly of urgent and repeated requests by appellee that delivery be hastened and as many promises by appellant that the castings would be ready for shipment in a short time. Appellant did make and deliver many of the castings named in the order and such were inspected and approved by the railroad company within the terms of the contract, but there were two different kinds of castings, commonly called by the parties "C. M. 67" and "C. M. 117" of which none had been manufactured when the time within which the contract was to be carried out had expired. A large number of such castings were made and delivered after such time had passed and, upon being inspected and tested by the railroad company, were found to be defective and were returned to appellant. In the meantime appellant had been paid in full by appellee for all castings made by it under the contract, including those which were found to be defective. The castings which were rejected were returned to appellant and appellee purchased castings elsewhere with which to complete its rebuilding contract with the railroad company. Appellee then sought to induce appellant to return to it the money paid for the defective castings, and this appellant refused to do. Appellee thereupon brought this action against appellant and, upon a jury trial, had a verdict and a judgment for $1563.50 from which defendant below appeals. It is not argued here that the amount of the judgment is erroneous or excessive if appellee is entitled to recover.

A large number of errors are assigned by appellant but the only points argued here are that the railway company had either inspected and approved these castings, or that it had waived the right to inspection, and that appellee is bound by either action on the part of the railway company and cannot thereafter reject some of the castings and be reimbursed therefor.

These were questions of fact, involving much correspondence and much oral testimony as to personal interviews and, after a careful examination of the entire record, we are of opinion that the jury were justified in finding that the railroad company had not inspected and approved those castings nor waived inspection prior to their condemnation and return by appellee. The evidence shows that the entire burden of procuring inspection of these castings rested upon appellant. At the same time that the original order was sent to appellant, appellee notified appellant that the material was subject to the inspection of the railway company in the usual manner. In reply thereto, appellant asked appellee if appellee wished to have submitted to it hard iron samples of the castings, or whether appellant should rely wholly upon the inspection of the railway company's inspector. To this appellee replied that it did not desire any samples sent to it at all as the inspection was entirely in the hands of the railway company. Thereupon appellant wrote appellee: "We note what you say in regard to the inspection of our castings and will take this matter up with the Santa Fe people." While it was customary for the railroad company to inspect the material at the place of manufacture, still it reserved the right to do so at the place to which it might be shipped if it wished, and it is not denied but what appellant had in its possession before any work was done on appellee's order certain inspection certificates furnished by the railroad company wherein this right to inspect at destination was reserved. Appellant claims that one Reinhardt, an employee of the railroad company stationed at appellant's plant, was placed there for the purpose of inspecting these castings and did so and approved them. From all the evidence we are of opinion that Reinhardt was not an inspector of castings and did not represent the railroad company for that purpose, but was located at appellee's plant for the

purpose of exercising a general supervision over its work of re-building cars for his employer.

Appellant relies upon a letter of date December 2, 1908, from one Hodges, general purchasing agent of the railroad company, to appellant, in which occurs the following: "We have arranged matters so that Mr. Armstrong" (chief inspector of the company) "and one of our pattern makers from Topeka will visit your plant within the next week or so and go over the patterns thoroughly. As agreed last night, it will not be necessary to hold up any shipments which you are making to the Crawford people," and contends that this language must be construed to mean the waiving by the railroad company of the right to inspect the castings before shipment. We do not so consider it. At the time this letter was written none of the particular castings in question here had been made, nor were any made for at least thirty days thereafter, and we conclude that the jury were fully warranted in finding that this letter did not refer to such castings. But, if we give to this letter the meaning ascribed to it by appellant, still we cannot consider it as decisive of the point involved. An inspection and approval of the patterns by the railroad company cannot be construed as an approval of the castings made from such patterns, for the patterns might be correct in every particular and yet every casting made therefrom might be defective. Again, even if the railroad could be said to have waived the right to inspect these castings at the place of manufacture, that action could not be construed as an approval of the castings or as a waiver of the right to inspect them anywhere, for by its inspection specifications, the railroad company expressly reserved the right to inspect material, if desired, at the place of destination.

Again, under the contract and the specifications of the railroad company, it was the duty of appellant to notify the railroad company whenever it had cast-

ings ready to ship and the railroad company then had the right to send an inspector to appellant's establishment and inspect such castings before shipment, if desired. Late in December or early in January appellant notified the railroad company that it was about to ship a car load of these castings and the railroad company caused them to be inspected before shipment. It does not appear that any such notice was given the railroad company thereafter until the following May, although repeated shipments were made by appellant to appellee during that period of time. The failure of appellant to offer the railroad company an opportunity to inspect each shipment of castings before it left the place of manufacture was one for which appellee cannot be held responsible.

The president of appellant has testified that the railroad company never waived inspection of material that was to be shipped to appellee. It can hardly be said that appellant has suffered by reason of any delay in inspection, for it is not claimed that the lapse of time caused the castings to deteriorate, and it is proven and not denied that the rejected castings were unfit for use. These castings were paid for by appellee before inspection and when inspection by the proper party had been made in accordance with the conditions attaching to the contract and the castings were found to be defective, appellee was entitled to have refunded to it the money it had expended for such defective materials.

Errors are assigned in connection with the rulings of a trial court on the admission of evidence and the giving or refusal of certain instructions, but as these points are not argued by appellant here, they must be considered as waived.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*