William F. Merle, Appellee, v. Joseph Beifeld et al.,
Appellants.

Gen. No. 20,354.

William F. Merle, Appellant, v. Joseph Beifeld et al.,
Appellees.

Gen. No. 20,364.

1. FIXTURES, § 2*—*when contract does not show intent to change
law.* Under a contract providing that a concessionaire should fur-
nish a statement of the cost of buildings, and providing that "in
determining the cost no account shall be taken of movable fixtures,
as tables and chairs, nor of any linen, silver or table and kitchen
utensils," no intention to change the rule of law as to fixtures is
shown.

2. FIXTURES, § 13*—*what are.* Items furnished by a lessee, such
as bar fixtures, railings, filter, tank and piping, refrigerators, range,
shelving, brackets, bar fittings and curtains, *held* not appurtenances
or fixtures of a permanent character attached to the building.

3. LANDLORD AND TENANT, § 219*—*when landlord liable for cost of
improvements.* Under a contract whereby a concessionaire in an
amusement park was granted space therein, *held* that the landlord
was liable for the cost of constructing buildings, booths and tunnel
outside of the space leased, it appearing that the lessee was granted
the right to sell certain articles anywhere within the park and that
such sale was advantageous to the landlord.

4. CONTRACTS, § 201*—*when milk is "drink."* Under a contract
whereby a lessee of an amusement park was required to pay a
commission on drinks sold, *held* that milk sold as part of a meal
with eatables was not to be considered a drink, but when sold alone
it was to be so considered.

5. CONTRACTS, § 252*—*when contract is modified.* Where a con-
tract provided that a lessee company in an amusement park was
to pay twenty-five per cent. on all drinks, including champagne, to
the lessor company, and the master found that such contract had
not been modified, *held* that such finding was against the manifest
weight of the evidence, it appearing that a reduction to ten per cent.
as to the item of champagne was agreed to informally by the di-
rectors of both companies, and that similar other changes had been
agreed to in this informal manner.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

Merle v. Beifeld, 194 Ill. App. 364.

6. EQUITY, § 425*—*when findings of master are reasonable.* Under a contract requiring a hotel lessee in an amusement park to pay a commission of twenty-five per cent. on candy, peanuts, etc., sold by it, which commission was credited to the lessor, *held* that findings of a master that such commission was fair and reasonable were proper.

7. PAYMENT, § 3*—*what constitutes.* Under a contract requiring a lessee in an amusement park to pay commissions to the lessor, *held* that credits on an account constituted payment, the lessor being indebted to the lessee.

8. CONTRACTS, § 201*—*when ice cream properly classed as "food."* Under a contract as to commissions to be paid by a lessee in an amusement park to the lessor, *held* that ice cream could not be properly classed as candy, but as a "food," whether sold in a dish, cone or sandwich.

9. EQUITY, § 425*—*when findings of master and court are proper.* Findings of a court that a lessor amusement park should be paid a commission or revenue derived from advertisements on menu cards, by a lessee of a restaurant, approved.

10. EQUITY, § 425*—*what findings are proper.* Findings that the use of space by a lessee outside of that contracted for was with the acquiescence of the lessor company and for its benefit, and that the lessee was not chargeable for its use, approved.

11. EQUITY, § 425*—*when findings are reasonable.* Under a contract providing for commissions to be paid by a lessee in an amusement park, *held* that findings as to the reasonableness of commissions and other items were proper.

12. EQUITY, § 431*—*when objection to findings are necessary.* Findings of a master not excepted to cannot be objected to on appeal.

13. CORPORATIONS, § 1088*—*when corporate officer not entitled to interest on salary.* Where a president of a corporation voluntarily refrained from drawing his salary, the corporation was not liable for interest thereon, and a finding that the payment of such interest was unwarranted and illegal was proper.

14. LANDLORD AND TENANT, § 301*—*when rebate to tenant improper.* A finding of a master that a rebate allowed a lessee of an amusement park on its electric light bill was unwarranted, *held* proper, since the fact that the lessor benefited by the light supplied by the lessee did not entitle it to a rebate not granted to other lessees.

15. CORPORATIONS, § 186*—*when stockholder entitled to accounting.* In an action by a stockholder charging a misappropriation of corporate funds, *held* that findings that no conspiracy existed but that there should be an accounting, because of mistakes and improper charges, were proper.

*See **Illinois Notes Digest, Vols. XI to XV,** and **Cumulative Quarterly,** same topic and section number.

16. CORPORATIONS, § 187*—*when equity has jurisdiction to aid stockholders.* Where an officer or directors of a corporation permit funds thereof to be diverted, even though acting in good faith, the jurisdiction of a court of chancery may be invoked by a stockholder against the corporation and its directors to secure a proper application of such funds or property, and in such case the element of fraud need not exist, and the decree which gives redress is not an interference with the internal management of a corporation.

17. CORPORATIONS, § 188*—*when demand is condition precedent to suit by stockholder.* Findings of a master that the majority owner of stock of a corporation controlled the election and acts of its directors, wherefore a demand to restore money wrongfully diverted to the prejudice of the corporation would be futile and was not a condition precedent, *held* sustained by the evidence.

18. COSTS, § 4*—*when allowance improper.* In an action by a stockholder charging a misappropriation of corporate funds, where an accounting was ordered, a finding and order providing for the payment of the complainant's expenses and attorneys' fees from the moneys recoverable was improper and without authority.

### HEADNOTES FOR ADDITIONAL OPINION.

1. COSTS, § 1*—*when allowed.* Nothing can be allowed and taxed as costs but items of cost designated by the statute to be so allowed and taxed, except in cases brought by trustees for the construction of wills where the cost of litigation is borne by the estate.

2. APPEAL AND ERROR, § 499*—*who may object to allowance of costs.* On a stockholder's bill for an accounting, where the corporation did not object to an allowance of costs and attorneys' fees, a defendant stockholder who was a party and whose interests would be adversely affected, had the right to object to such allowance on appeal.

3. INTEREST, § 21*—*when allowed in action by stockholder.* On a stockholder's bill for an accounting, where various items were erroneously charged in the accounts of the corporation, an amusement park, with a lessee therein, *held* that the statute provided for the allowance of interest for "money received to the use of another and retained without the owner's knowledge," on such items.

4. APPEAL AND ERROR, § 1712*—*when assignment of error not waived.* Assignment of error *held* not to have been waived where urged on the oral argument, although but slight mention was made of same in the printed briefs and argument.

SCANLAN, P. J., dissenting.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Merle v. Beifeld, 194 Ill. App. 364.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD
M. MANGAN, Judge, presiding.  Heard in the Branch Appellate Court
at the March term, 1914.  Affirmed in part, reversed in part and re-
manded with directions.  Opinion filed June 17, 1915.  Rehearing
denied and additional opinion filed October 15, 1915.  Dissenting
opinion filed November 5, 1915, *nunc pro tunc* as of October 15, 1915.

HELMER, MOULTON, WHITMAN & WHITMAN, for appel-
lant William F. Merle; ROLAND D. WHITMAN, of coun-
sel.

FELSENTHAL, BECKWITH, WILSON & SPENGLER, for ap-
pellees Joseph Beifeld and Sherman House Hotel.

MR. JUSTICE PAM delivered the opinion of the court.

This is a proceeding in chancery by William F.
Merle, a stockholder of the White City Construction
Company, against the Sherman House Hotel Company,
Joseph Beifeld, Morris Beifeld, Eugene V. Beifeld,
Frank Behring, Lillian Beifeld, L. A. Dehen, Aaron J.
Jones, Samuel J. Kline, Paul D. Howse, Edward B.
Grossman, the Chicago Fire Exhibition Company and
the White City Construction Company, charging a mis-
appropriation of corporate funds of the White City
Construction Company to his prejudice, and praying
relief.

Answers were filed by all of the defendants, and
after a preliminary hearing before the court, the
cause was referred to a master to report his conclu-
sions of law and fact.

The decree of the Circuit Court held that the bill was
properly brought, but did not grant all the relief prayed
for.  There were findings in the decree against Joseph
Beifeld, the Sherman House Hotel Company and the
Chicago Fire Exhibition Company.  To the entry of
this decree exceptions were taken and appeals prayed
by William F. Merle, complainant, Joseph Beifeld, the
Sherman House Hotel Company and the Chicago Fire
Exhibition Company.  However, only the complainant,

Joseph Beifeld, and the Sherman House Hotel Company perfected their appeals.

The defendants Joseph Beifeld and the Sherman House Hotel Company perfected their appeal jointly and severally. Under an order of court these appeals were consolidated for hearing.

Hereafter we shall designate William F. Merle as the complainant, and the Sherman House Hotel Company and Joseph Beifeld as the defendants; and when we have occasion to refer to the Sherman House Hotel Company separately, we shall term it the Hotel Company, and the White City Construction Company as the Construction Company.

The bill of complaint was filed January 11, 1908, by William F. Merle, a stockholder and bondholder of the Construction Company, on behalf of himself and other stock and bondholders of the Construction Company, against the defendants heretofore named. The material facts as set up in the bill are as follows:

That the Construction Company was organized under the laws of the State of Illinois August 26, 1904, with a capital stock of $1,000,000, divided into 10,000 shares of the par value of $100 each; that ever since its organization, a majority of the capital stock of the Construction Company has been owned or controlled by the said Joseph Beifeld; that while from time to time shares of stock appeared on the books of the company in the name of Lillian Beifeld, Morris Beifeld, Eugene V. Beifeld, Frank Behring, Samuel J. Kline, L. A. Dehen, and E. B. Grossman, the said shares of stock were in fact either held in the interest of Joseph Beifeld and were controlled by the said Joseph Beifeld, and that by means of said stock ownership or control, Joseph Beifeld has continually dominated the directors in the conduct of the company's business; that the Hotel Company, one of the defendants, is an Illinois corporation, and that Joseph Beifeld owns and controls substantially all of the capital stock thereof;

that Joseph, Morris, Eugene V. and Lillian Beifeld conspired for the purpose of fraudulently depriving the stockholders of the Construction Company, including the complainant herein, of their rights and interests as stockholders, and converting its funds, profits and property for the benefit of the Beifelds and the Hotel Company; that in pursuance of said conspiracy, the Beifelds and the Hotel Company have, from time to time prior to the filing of the bill, since August 26, 1904, fraudulently caused and permitted large sums of money to be paid out of the funds of the Construction Company to the Hotel Company, to the Beifelds and other persons unknown to the complainant, in their business and financial transactions with the Construction Company, to which sums of money thus paid out or credited or allowed, said parties were not legally entitled.

The bill sets forth specifically a number of the transactions of the Hotel Company, Joseph and Morris Beifeld and their agents, in which it is alleged the Construction Company was defrauded and suffered financial loss. Inasmuch as these transactions will have to be referred to specifically in the course of this opinion, we shall refrain from setting them out at this time.

The bill further sets forth that Joseph Beifeld has in other instances than those specifically enumerated, wronged the Construction Company by a personal conversion of the funds, and by being interested in other corporations or business inimical thereto.

The bill further alleges that by reason of the facts already set forth, any demand upon defendants or any of them, including the Construction Company, for the rectification of the wrongs complained of, would have been futile; it concludes with a prayer for an accounting, the appointment of a receiver, and for other relief.

While all of the defendants answered the bill, we

need concern ourselves only with the answers of the following defendants, viz. the Construction Company, Joseph Beifeld, and the Hotel Company; save to say, that all of the defendants denied entering into any conspiracy or combination as charged in the bill of complaint.

In its answer, the Construction Company further stated that it was a solvent and going concern, and objected to interference with the internal management of its affairs. It denied complainant's right to the relief prayed for, but stated its willingness to produce its books and records for examination by the court, and to abide by any order the court might enter in the premises.

Joseph Beifeld, in his answer, denied the alleged conspiracy and the fraudulent acts set forth, and that a demand for the rectification of the alleged wrongs would have been futile.

The Hotel Company adopted the answer of Joseph Beifeld.

Upon the filing of these answers, complainant amended his bill of complaint by alleging that certain facts set forth in Joseph Beifeld's answer were additional evidence of its charges against the said Joseph Beifeld. Replications were filed to the answers, which answers to the original bill were ordered to stand as answers to the amended bill.

The Construction Company was organized in 1904 for the purpose of operating an amusement park in the city of Chicago, known as White City. Paul D. Howse and Aaron J. Jones, two men of experience in the amusement business, brought the White City project to the attention of Joseph Beifeld in June, 1904. Mr. Beifeld at that time was president and principal owner of the Hotel Company, a corporation which conducted the Hotel Sherman and the College Inn restaurant in Chicago. He was without experience in the amusement business. Jones and Howse took the prop-

osition to him, knowing he was a man of means, and believing he would finance the enterprise because it would give him an opportunity to extend his restaurant business.

A lease of the ground at Sixty-third street and South Park avenue was taken by Joseph Beifeld, Jones and Howse, and subsequently assigned to the Construction Company, which corporation operated the amusement park. A bond issue of $500,000 was authorized to raise the money with which to build the park. The capital stock of this company was $1,000,000, of which $300,000 was divided between Joseph Beifeld, Howse, Jones and one E. C. Boyce, an architect living in New York City, who drew the plans and supervised the construction of the park. The remainder of the capital stock was to be used in selling the bonds,— $200,000 as a commission to sell, and $500,000 to be given as a bonus with the sale of the bonds. Of these bonds, Joseph Beifeld himself purchased $235,000 worth, and sold $215,000 worth more to his friends; and $50,000 worth were otherwise disposed of. There is no question that Joseph Beifeld controlled and owned a majority of both the capital stock and the bonds issued by the Construction Company.

Complainant was a manufacturer of bank, saloon and restaurant fixtures, etc. He first became interested in the Construction Company in the fall of 1904, when he purchased $1,000 worth of bonds, with which he received $1,000 worth of stock. He made further purchases of stock and bonds subsequently to that time, the last purchase being in 1907; and at the time this bill was filed, Merle owned practically one-seventh of the entire capital stock of the Construction Company. He was also interested in several concession contracts, among which was that with the Chicago Fire Exhibition Company.

The construction of White City, before it was opened to the public on May 27, 1905, involved an ex-

penditure of more than $800,000, a sum much larger than originally contemplated. The profits during the first season were sufficient to pay up the difference between the $500,000 raised by the sale of bonds and the actual cost of construction. This expenditure did not include the cost of constructing the College Inn building, otherwise known as the Casino.

The directors for the first year and until October 31, 1905, were Joseph Beifeld, E. C. Boyce, Aaron J. Jones and Paul D. Howse. In October, 1905, they were increased to seven at which time complainant was elected a director, and he continued to be a director up to the time of the filing of this bill.

From the beginning, it was contemplated that Joseph Beifeld was to have the concession for a large restaurant at White City, including the privilege of selling drinks there. Accordingly a concession contract known as "Contract A" was entered into under date of November 9, 1904, between the Construction Company and the Hotel Company, giving the latter company the exclusive right to the sale of foods, drinks, cigars, cigarettes and tobacco, within the premises occupied by the Construction Company.

On December 10, 1904, the Construction Company granted to the Hotel Company a concession for the exclusive sale of candy, peanuts, popcorn, cracker jack and fruits of all kinds, except that sold through slot machines, on the premises known as White City, for a period of ten years. This concession contract will hereinafter be referred to as "Contract B." The manner in which these contracts were interpreted and carried out by the Hotel Company and the Construction Company gave rise to the numerous allegations in the bill of complaint upon which the complainant depends to maintain his action.

This cause came on for hearing upon the original bill as amended, the answers and replications thereto. No demurrer was filed upon the facts set forth in the

bill. It is fair to presume, therefore, that the bill did set up facts which, if proven, entitled complainant to the relief sought. There was a hearing of the case before it was referred to the master and sufficient evidence was heard to enable the court to construe certain provisions in contract "A", after which the cause in general was referred to the master in chancery to hear the other evidence both as to the right of the complainant to maintain the bill and as to items of accounting sought by complainant, to the end that the master may consider the evidence with the guidance of the court's opinion as already announced with reference to certain provisions in contract "A" and that the court may, upon coming in of the master's report, render a decree covering both the right of the complainant to maintain the bill and all the items and amounts of such accounting, if the court should decide in favor of the complainant thereon. The court, however, expressly reserved its findings on the complainant's right to maintain the bill. Under this order, the master heard the evidence and reported his conclusions of law and fact.

In this report, the master concluded that the complainant was entitled to maintain the bill; that while complainant had not proven that a conspiracy existed as charged in the bill, yet he had proven sufficient facts to entitle him to an accounting; and further gave his conclusions as to various items which should be figured in the accounting, rules to be followed in the accounting, in addition to those that had already been laid down by the court in its special order of reference heretofore referred to. The master's report covered only the seasons of 1905, 1906 and 1907, the period from the organization of the Construction Company up to the date of the filing of the bill of complaint.

At the hearing upon exceptions to the master's report, the decree from which these appeals have been prosecuted was entered, although not by the same

chancellor who entered the order of reference.

Before the master concluded' that the complainant was entitled to maintain his bill, he heard evidence on the specific charges set forth in the bill upon which the complainant based his claim for relief. These charges relate to the alleged acts and declarations of Joseph Beifeld, the officers of the Hotel Company, and the officers and directors of the Construction Company. The master found that the evidence clearly showed that Joseph Beifeld controlled not only the board of directors of the Construction Company, but also the stockholders thereof; that funds and property of the Construction Company had been wrongfully diverted to the Hotel Company and Joseph Beifeld; that the said Joseph Beifeld, being in control of the board of directors of the Construction Company and owning the majority of its stock, had the right to and did name at all times the directors of the Construction Company, and thereby continued to have control of the said company; that by reason of said control, a demand on the said Beifeld and the Hotel Company to restore to the said Construction Company the funds and property wrongfully diverted would have been futile.

The defendants contend, first, that the acts and declarations were matters of internal corporate management, of which, in the absence of fraud, equity had no jurisdiction; that the evidence failed to show fraud on the part of the defendants Beifeld and the Hotel Company; and further, that before complainant may institute suit in his own name and conduct the litigation in question, he must first show that he exhausted all means within his reach to obtain from the corporation itself a redress of his grievances, unless such state of facts is proven which makes it apparent that a demand to secure a redress of grievances would have been futile; and that the evidence in this case failed

Merle v. Beifeld, 194 Ill. App. 364.

to show either such demand, or that such a demand, if made, would have been futile.

The first issue arises with reference to the construction and interpretation of "Contract A," and the acts of the defendants with reference thereto. Complainant contends, first, that the Hotel Company included in the so-called construction account, items which were not properly chargeable to the Construction Company under the contract; and secondly, that the Hotel Company did not credit the Construction Company with the proper commissions on the sale of drinks, as provided for in said contract. The provisions of the contract material to the issues under discussion, are as follows:

"1st. The Company (the Construction Co.) leased to the concessionaire (the Hotel Co.) concession known as the White City concession No. 1 for exclusive right of sale of foods, drinks, cigars, cigarettes and tobaccos within the premises occupied by the Company as lessee of a tract of land situated at the corner of 63rd street and Park avenue upon which the Company is constructing the White City.

"2. The Company grants to concessionaire the use of space approximately 100 by 200 feet on the east side of said grounds on the north end thereof, the exact space being shown on the ground plan drawn by Edward C. Boyce, adopted by the Company and issued by Joseph Beifeld, President.

"5. For the purpose of determining the cost of the buildings, concessionaire to furnish after the completion of the same full statement of cost, together with amounts expended by him for all appurtenances and fixtures of a permanent character attached to the building, all of which shall be a part of the cost of the building. In determining the cost no account shall be taken of movable fixtures, as tables and chairs, nor of any linen, silver or table or kitchen utensils.

"9. As compensation, concessionaire agrees to pay to the Company in lieu of all other amounts or charges twenty-five per cent. of the gross receipts from the

sales of drinks and ten per cent. of the gross receipts from the sales of cigars, cigarettes and tobaccos, but shall not pay any commission or percentage on the sale or sales of eatables.

"10. Concessionaire shall not pay to the Company any portion of the twenty-five per cent. and the ten per cent. of the gross receipts, but shall retain the same until such per cent. shall equal the total original cost of the building or buildings, appurtenances and equipments as shown by the statement which shall be furnished to the Company by the concessionaire and until concessionaire shall be reimbursed for all outlays in maintaining buildings, appurtenances and moneys expended for insurance thereon. When total amount of retained percentages by the concessionaire shall equal cost of the buildings, appurtenances and cost of maintenance, buildings shall become the property of the Company, and concessionaire shall then execute and deliver to Company conveyance which may be necessary, upon receiving due compensation concessionaire shall assign to Company all insurance then upon the buildings and equipment. Thereafter concessionaire shall pay twenty-five per cent. of the gross receipts from the sales of drinks, ten per cent. of the gross receipts from the sale of cigars, cigarettes and tobaccos in the manner hereinafter provided. Thereafter Company shall be liable for and shall pay costs of making repairs to the buildings and cost of charges of maintenance excepting for water and cost of lighting and heating.

"12. Concessionaire shall install and keep for sale such soft drinks, being drinks other than spirituous and malt liquors, as the Company may from time to time in writing request. In case of failure to do so after five days' notice, concessionaire shall forfeit the exclusive rights and privileges granted by this contract."

These provisions show that the contract may be considered in two divisions, viz.: (1) Provisions relating to payments for the cost of construction, and (2) provisions relating to articles to be sold and com-

missions to be paid by the Hotel Company. These two provisions correspond respectively to the first and second contentions of the complainant as hereinabove set forth. We shall first take up the contention that the Hotel Company included in the so-called construction account items which were not properly chargeable to the Construction Company.

While the discussion of this question involves the entire construction, yet, with the exception of the bar fixtures, refrigerators, motors, filter, cooking range and like items, there are but few items in the entire construction account—such as the construction of the Terrace Tavern building, extra booths and the tunnel —in dispute between the parties; the only others being some minor items ranging from a few cents to several hundred dollars, and totaling about $1,716.28. In the final decree, items to the extent of $9,303.57 were disallowed in the entire construction account which totaled $113,000 and included some 331 items. Of the amount disallowed, $7,587.29 was acquiesced in by the defendants, leaving in dispute between the parties the sum of $1,716.28, as previously mentioned; and as we regard the evidence, we believe the master and court were warranted in directing that the Construction Company should receive credit for the entire amount disallowed, viz., $9,303.59, and the Hotel Company be charged therewith. This brings us to a discussion of the first contention under this issue, viz., the right of the Hotel Company to charge the Construction Company with the value of certain fixtures and electrical equipment installed in connection with the operation of the College Inn restaurant under concession "Contract A," and the cost of the construction of the Terrace Tavern building, tunnel and extra booths.

Before this cause was referred to the master, the chancellor, as already has been stated, passed upon several questions involved in the construction of

"Contract A," one of them being whether or not the bar fixtures, refrigerators, motors, filter, cooking range, and items of like character were a proper charge against the Construction Company. This question involves a construction of section 5 of contract "A," which section is as follows:

"For the purpose of determining the cost of the buildings, concessionaire to furnish after the completion of the same full statement of cost, together with amounts expended by him for all appurtenances and fixtures of a permanent character attached to the building, all of which shall be a part of the cost of the building. In determining the cost no account shall be taken of movable fixtures, as tables and chairs, nor of any linen, silver or table or kitchen utensils."

Complainant contends that the bar fixtures, refrigerators, motors, belting, cooking range, filters and like items, were not appurtenances or fixtures of a permanent character attached to the building, under the rule of law ordinarily applicable where the relation of landlord and tenant exists, as it did in the case at bar, between the Sherman House Hotel Company and the White City Construction Company, and that to hold otherwise would be in conflict with the established and known principles of construction as between landlord and tenant; that the evidence shows that these items under discussion could easily be removed by the Sherman House Hotel Company; that the Hotel Company exercised ownership over them; and furthermore, that these items were in fact trade fixtures which could not properly be regarded as the property of the Construction Company, the owner of the building. The court, while admitting the existence of the rule of law as contended for by complainant, held that under section 5 of contract "A" "the parties to this contract laid down a rule between themselves which is different from the usual rule," which is substantially what defendants contended. Under this ruling the following items were charged against the Construction

Company as being items which under the terms of said contract were to be treated as equipment or appurtenances or fixtures of a permanent character, attached to said building, and were to be repaid out of commissions under said contract and to be allowed in the accounting:

| | |
|---|---:|
| Brunswick-Balke-Coll. Co., Bar Fixtures, etc. | $1,500.00 |
| Walzer Bros., Awnings | 139.50 |
| Brunswick-Balke-Coll. Co., Wood finish, etc. | 1,405.00 |
| W. H. Lau, Fixtures & railings | 70.00 |
| Western Electric Co., Ceiling fans | 9.28 |
| Lynn Filter Co., Filter, tank & piping | 499.43 |
| F. P. Schmidt Wire & Iron, No bill | 201.50 |
| Orr & Lockett Hardware Co., Refrigerators | 2,536.00 |
| Brunswick-Balke-Coll. Co., Additions, etc., Buffet | 295.00 |
| Crocker-Wheeler Co., 2 H. P. motors | 76.00 |
| Lyon & Son, Belts | 52.50 |
| Crocker-Wheeler Co., 3 motors | 270.00 |
| H. Newgaard & Co., Motor Slate | 30.00 |
| Electric Manhattan Supply Co., 4 Fans | 40.00 |
| F. Wolf & Co., Refrigerating plant | 3,887.35 |
| Carmichael-Wilks Range Co., Range & fixtures | 1,265.87 |
| Samuel Lyon & Son, Beltings | 6.15 |
| Samuel Lyon & Son, Beltings | 8.33 |
| Samuel Lyon & Son, Beltings | .75 |
| Brunswick-Balke-Coll. Co., Shelving & brackets | 40.00 |
| J. W. Reedy Elevator Co., Drum & attaching same | 20.00 |
| Cleveland Faucet Co., Bar fittings & connections | 1,274.37 |
| Orr & Lockett Hdw. Co., Elevator to dairy lunch room | 100.00 |
| U. S. Tent & Awning Co., Curtains | 57.00 |

This ruling of the court was followed by the master and the various items were allowed in the final decree as a charge against Construction Company.

Evidently the court construed the following language in section 5: "In determining the cost no account shall be taken of movable fixtures, as tables and chairs,

nor of any linen, silver or table or kitchen utensils,''
as evidencing the agreement of the parties as to what
item constituted movable fixtures in contradistinction
of what item should be considered fixtures of a perma-
nent character attached to the building. However, as
we read this section, it does not lay down any rule dif-
ferent from that contended for by complainant. The
language just quoted, which the court has construed
as laying down a different rule, does not show an in-
tention to ignore the rule of law as applicable to this
section. It does state, ''movable fixtures, as tables and
chairs,'' shall not be considered in determining the
cost of the building. But this is merely declaratory
of what the law is on this subject. We are of the
opinion that this section must be interpreted and con-
strued in accordance with the well-accepted rule of
law determining whether or not appurtenances and
fixtures are of a permanent character attached to the
building, namely: Has the tenant the right to their
removal or do they become the property of the land-
lord?

Upon the hearing of this issue before the court, the
complainant, who contended for the rule just enunci-
ated, introduced considerable evidence bearing upon
the question whether or not the items charged against
the Construction Company were of a permanent char-
acter as contemplated in section 5 of this contract.
Under the ruling of the court below that evidence
was immaterial; but in the views expressed by this
court, we have reviewed it for the purpose of deter-
mining whether all these items or any part thereof
should be charged back to the Hotel Company and
the Construction Company given credit therefor. Af-
ter a careful review of the evidence upon this sub-
ject, we are of the opinion that the following items,
under the rule of law as we think pertains, cannot be
considered appurtenances or fixtures of a permanent
character attached to the building and were therefore

wrongfully charged against the Construction Company:

| | |
|---|---:|
| Brunswick-Balke-Coll. Co., Bar fixtures, etc. | $1,500.00 |
| W. H. Lau, Fixtures & railings | 70.00 |
| Lynn Filter Co., Filter, tank & piping | 499.43 |
| E. P. Schmidt Wire & Iron Co., No bill | 201.50 |
| Orr & Lockett Hdw. Co., Refrigerators | 2,536.00 |
| Brunswick-Balke-Coll. Co., Additions, etc., Buffet | 295.00 |
| Carmichael-Wilks Range Co., Range & Fixtures | 1,265.87 |
| Brunswick-Balke-Coll. Co., Shelving & brackets | 40.00 |
| Cleveland Faucet Co., Bar fittings & connections | 1,274.37 |
| U. S. Tent & Awning Co., Curtains | 57.00 |

In most instances, they are but trade fixtures and are of such character that, even though attached to the building, they remained the property of the lessee herein, the Hotel Company. The remaining items in that account we regard as properly charged to the Construction Company.

That portion of the decree which permitted the entire items herein set forth to be charged against the Construction Company will therefore be reversed and the court below directed to enter a decree in accordance with the views hereinabove expressed.

Another item that complainant contends was improperly charged in the construction account with the Construction Company was the cost of the Terrace Tavern building, and certain booths other than the four ice cream booths provided for under "Contract B."

The Terrace Tavern was erected outside of the space set forth in "Contract A," to be occupied by what was known as the College Inn building. Complainant contends that there was nothing in any of the provisions of "Contract A" which contemplated payment for the construction of any building other than

that erected on the space allotted to the Hotel Company in said contract. The evidence shows that Howse and Joseph Beifeld during the first season (1905) met and agreed that it was desirable for the best interests of the enterprise that the Terrace Tavern building be erected. It was located at a considerable distance from the College Inn building. Howse testified that it added to the enjoyment of the people to have a building in this locality, where they could have ice cream and soft drinks served them. Complainant's contention is based upon the fact that the Hotel Company, in the concession granted under ''Contract A,'' was confined to the space mentioned in said contract. We do not think it was contemplated that section 2 of this contract should limit the field of operations of the Hotel Company thereunder. Section 1 clearly provides that the right to sell food, drinks, tobacco, etc., should obtain anywhere within the premises occupied by White City. Furthermore, the master found as a fact in the case, to which no exception was taken by complainant, that ''in respect to selling of eatables and drinks, in general, at other places than the premises described in Exhibit A, it was proper and advantageous to the Construction Company that such sales should be made.'' Furthermore, the evidence shows that the building occupied by every concessionaire was in the first instance constructed at the expense of the Construction Company; the only exception being the buildings erected by the Hotel Company, which bore the initial expense and then secured payment by crediting the Construction Company with commissions as provided for in the contract.

While no written agreement was made, the evidence shows that Howse and Joseph Beifeld agreed informally that the Hotel Company should construct the Terrace Tavern building. Even if this informal agreement had not been made, we are of the opinion that inasmuch as the Hotel Company did construct the

building and it was used for purposes authorized in "Contract A," in contemplation of that contract, it was to be paid for by the Construction Company. What we have said here with reference to the Terrace Tavern also applies to the booths which complainant claims were erected and charged to the Construction Company without authority. We therefore concur in the finding of the master and the court, that the Construction Company was properly charged with the items of the Terrace Tavern building and the booths.

The master disallowed items aggregating $355.92 in the Terrace Tavern bill, which included a $250 charge for a merry-go-round. But as the defendants admitted the impropriety of the latter charge and made no objection to the ruling of the master on the remaining items, they require no further consideration here.

The finding in the decree with reference to the items of the Terrace Tavern building and the extra booths will be affirmed.

The Construction Company was also charged with $3,000 for the building of a tunnel extending from the College Inn building to the band stand. The master found that said tunnel was constructed with the approval of the directors of the Construction Company and that the evidence showed it to be beneficial to the Construction Company by way of expediting the sale of drinks; accordingly the charge was upheld by the master and this finding was approved by the court. What we have said relative to the Terrace Tavern building and the booths applies with equal force here, and the finding in the decree as to the item for the construction of the tunnel is therefore affirmed.

An item of $2,000 for the erection of a band stand was not passed upon by the master because said expenditure occurred after the filing of the bill, and the master was of the opinion that the matter was not

properly before him. However, complainant contends that upon a re-reference to the master, in accordance with the decree, the matter should be inquired into. Tested by the same rule applied by us to the items of the Terrace Tavern, the tunnel and extra booths, we are of the opinion that the item is properly a charge against the White City Construction Company.

The second issue arising out of the contract is that the Hotel Company did not credit the Construction Company with proper commissions on the sale of drinks as provided for in said contract. The first item involved in this issue is the sale of milk at a booth operated by the Hotel Company on the premises of White City, which booth was known as the Wooden Cow. Milk was sold from this booth by the glass during the seasons of 1906 and 1907. The evidence shows that only on Saturdays and Sundays sandwiches and redhots also were sold from this booth, but that milk was sold every day. Complainant contends that the milk sold from this booth was not a food but a drink. Defendant contends that inasmuch as milk was sold at the restaurant with meals and no commission was payable thereon under the contract, the Hotel Company was not liable therefor on sales of milk made elsewhere. It was with reference also to this issue that the chancellor, before the matter was referred to the master, was asked to enunciate a rule governing the construction of "Contract A."

In support of his contention, complainant refers to the contract itself, section 9 of which provides as follows:

"As compensation, concessionaire agrees to pay to the Company in lieu of all other amounts or charges twenty-five per cent. of the gross receipts from the sales of drinks and ten per cent. of the gross receipts from the sales of cigars, cigarettes and tobaccos, but shall not pay any commission or percentage on the sale or sales of eatables."

Complainant contends that the word "eatables" is more restrictive than the word "food;" that while the word "milk" is defined by recognized authorities as a food, yet it cannot be considered an "eatable" in the sense used in the contract; moreover, that section 12 of said contract which provides that soft drinks shall be sold and designates soft drinks as being those "other than spirituous and malt liquors," shows that the word "drinks" as used in section 9 included soft drinks as well as spirituous and malt liquors.

The court held that milk sold in the College Inn building and elsewhere as part of a meal with eatables was not to be considered a drink; but when sold in individual glasses and not with eatables, it was to be considered a drink upon which the Construction Company was entitled to receive and the Hotel Company liable to pay, a commission of twenty-five per cent. on the gross receipts. We think this reasoning is sound; moreover, the evidence shows that outside of Saturdays and Sundays, when redhots and sandwiches were sold from this booth, milk alone was sold there and only by the glass. We hardly think it was within the contemplation of this contract that the Hotel Company could occupy space and buildings erected at the expense of the Construction Company for the sale of articles, unless some compensation were to be paid by way of commission on the sale of the articles. If from the evidence it were possible to determine the number of glasses of milk that were sold in connection with redhots and sandwiches,—i. e. as part of a meal,—the same distinction could be made here as was made with reference to the sale of milk when accompanying food sold in the restaurant proper. The decree with reference to this item will be affirmed, with the direction, however, that if evidence can be adduced to show the number of glasses of milk sold from the Wooden Cow, in connection with redhots or sandwiches, the amount of commission due the Con-

struction Company from the sale of milk from the Wooden Cow be reduced accordingly.

Another item in issue under this division is the commission to be charged upon the sale of champagne. Complainant contends that the contract was clear and definite, that twenty-five per cent. be paid on all drinks, including champagne. Such was the ruling of the court on the preliminary hearing, but this issue was referred to the master because of the claim set up by defendant that the contract had been modified so as to reduce the commission on champagne. Considerable evidence was introduced on that point, and the master found that the express terms of the contract controlled unless same had been modified by act of the board of directors, which the master found the evidence failed to show. This finding was concurred in by the court in its final decree.

We have carefully reviewed the evidence offered upon this question, and cannot concur in the conclusion of the master and the court. The evidence of Joseph Beifeld, Frank and Jones clearly showed that there had been an agreement on the part of the directors to modify the contract by reducing the amount of commission on champagne from twenty-five to ten per cent. Joseph Beifeld stated that when said agreement was made, all were present, including Boyce. Jones stated that Boyce was present. Frank, who testified that an agreement had been entered into, stated that he did not remember that Boyce was present, but that all the other directors were there, viz., Jones, Howse and Beifeld. Boyce testified that he did not remember having been present at any meeting when that question was discussed. While it is true that no written or formal agreement was entered into showing the modification of this contract, or that it occurred at a regular meeting of the board of directors, yet the master found that repeatedly prior to the opening of the park, and during the first year, many decisions and agree-

ments were made at informal meetings of the board of directors held on the grounds of the Construction Company; and the testimony of all save Boyce shows that this agreement was entered into during this period on the White City premises. The master further found that "many changes were made in concessionaires' contracts and many rejections and allowances were made to them, sometimes by formal action of the board of directors and sometimes without such action." In view of these findings by the master, we are of the opinion that his finding that there had been no modification of the contract providing for the payment of twenty-five per cent. commission on drinks with reference to the item of champagne was clearly and manifestly against the weight of the evidence, and that the master should have found that there was a modification as contended for by the defendants. The decree with reference to this finding is reversed, with directions to enter a finding in accordance with the views herein expressed.

There is also the item of champagne and cigars sold at banquets wherein the same was returned as food. Defendants argue that these banquets were given to public officials and others, and that they were served at a loss to the Hotel Company, and that in view of the advertising advantage accruing to the Construction Company, it was proper for the Hotel Company not to pay commissions on wines so served.

The finding of the master was that commissions of twenty-five and ten per cent. be paid on champagne and cigars respectively, at the prevailing prices at which these articles were usually sold. The court in its decree, however, modified the finding of the master, basing the commission not on the usual customary and retail charge of said goods, but on the actual cost price of the champagne and cigars. No doubt the court was of the opinion that there was some merit in defendants' contention. We see no reason to disturb

the finding of the court, and concur therein, save that only ten per cent. should be charged on champagne, in accordance with the views hereinabove expressed.

We shall now take up the contention of the parties with reference to "Contract B." On December 10, 1904, the Construction Company entered into a contract with the Hotel Company giving it the right to the exclusive sale of candy, peanuts, popcorn and cracker jack and fruits of all kinds, except that sold through slot machines; and for such concession the Hotel Company agreed to pay the Construction Company a compensation of twenty-five per cent. of the gross receipts derived from the operation or maintenance of said concession. Payment to be made every day, at such place and time as the Construction Company might designate.

Complainant contends, first, that the amount of compensation was inadequate; and, secondly, that the Hotel Company, instead of turning over to the Construction Company in cash the percentage on the sales as called for in the contract, credited the Construction Company therewith.

The master found that twenty-five per cent. of the gross receipts, as provided for in said contract, was a fair and reasonable commission, and in arriving at such conclusion commented upon the evidence of Boyce, a witness who was not friendly to Beifeld, and who stated that no reputable concern would have taken this concession at more than twenty-five per cent. The finding of the master was adopted by the court in its final decree, and we concur therein.

As to the other contention, the master found that the acts of the Hotel Company, in giving credit to the Construction Company for such percentage instead of paying it in cash, were contrary to the express terms of the agreement, and recommended that the Hotel Company be decreed to pay such percentage in cash, with interest thereon at the rate of five per cent. to

the Construction Company. The court, however, did not approve this finding and sustained defendants, exceptions thereto, upon the ground that whether the twenty-five per cent. commission was paid in cash or credited on the construction account, it constituted a payment under the terms of the contract. In coming to that conclusion, the court no doubt had in mind the fact that no interest was paid by the Construction Company on its indebtedness due the Hotel Company on the construction account, and that in equity the defendants were warranted in applying the commission as it did. We concur in this finding of the decree.

Complainant also contended that a fair and reasonable commission should be paid on ice cream sold by the dish outside of the casino and dairy lunch; also that a reasonable commission should be paid on the sale of ice cream cones, ice cream steins and ice cream sandwiches. Complainant contends that the sale of ice cream in any form, outside of the casino and the dairy lunch—where they constituted part of a meal—was not covered by any of the provisions in either "Contract A" or "Contract B;" that the Hotel Company had no right to exercise this privilege without paying a fair compensation on the sale of ice cream, outside of the sale of it by the dish in the casino and dairy lunchroom.

The master sustained the contention of the complainant, that it was not a food, but classed ice cream as a confection, and found that twenty-five per cent. would be a fair compensation on all sales thereof. This finding of the master indicates that he considered ice cream sold outside of the casino and dairy lunchroom as being covered by the provisions of "Contract B." This finding was approved by the court in its decree. As we read "Contract B," the only section that can possibly cover the sale of ice cream is that relating to the sale of candy. We hardly believe, in the ordinary acceptation of that word today, that ice cream can be

considered as candy; and merely designating it as a confection does not change its character. In our opinion, there is no question that ice cream is a food, whether sold in a restaurant, from a booth, or peddled from a basket, whether in the form of an ice cream stein, cone or sandwich, or by the dish; and moreover, we believe it must be considered a food, even in the restricted sense as used in the contract, namely, an eatable. The contract provided that the Hotel Company had the privilege of selling food anywhere upon the premises of White City. That ice cream is a food is not a debatable question, even though it may also be considered a refreshment. In our opinion, the sale of ice cream, either in the form of a dish, ice cream stein, cone or sandwich, whether in the casino, dairy lunchroom or anywhere else on the grounds, was covered by the provisions of "Contract A" giving the Hotel Company the right to sell food anywhere within the premises. Therefore, the finding of the master and the court with reference to this item will be reversed.

Complainant contends that a fair commission should be paid on the revenue derived by the Hotel Company from advertisements printed on menu cards that it used in the College Inn or Casino, and also on musical programs prepared and printed by it for use in the plaza where concerts were given. The master upheld this contention and found that twenty-five per cent. was a reasonable compensation for the privilege, of having advertisements on both its menu cards and musical programs. The court approved this finding only with reference to the advertisements on the musical programs, but held that the right to place advertisements on menu cards was an implied part of the concession for which no commission need be paid. Under the evidence heard by the master on this particular item, we concur in the finding by the court.

Complainant also charges that the Hotel Company was improperly given the right to use space under the

ballroom for dairy lunch purposes. The master found that the use of this space as a lunchroom was a distinct advantage to the White City Construction Company, acquiesced in by the directors, and that the Sherman House Hotel Company was not chargeable for its use. This finding was approved by the court and we concur therein.

During the years 1905 and 1906, towards the end of the season, the Hotel Company sold confetti. Complainant contends that twenty-five per cent. commission paid on such sales was not sufficient. The master found it was, and said finding was approved by the court and we concur therein.

Several other items upon which no commission was paid or credited, which complainant contends was contrary to the provisions of contracts "A" and "B," were the sale of water, orangeade, ice cream soda, and sundry confection sales. Upon the hearing, it was admitted by counsel for the defendant that compensation should have been paid and that the failure to do so was inadvertent; and no exception was taken to the master's finding that a commission was due on these items as provided for under the various contracts.

There were several items charged in the construction account against the Construction Company which defendants admit were erroneous. These were the items for filter and refrigerators, the erroneous charge for the filter being in the sum of $165 and that with reference to the refrigerators being in the sum of $1,787.35. A finding to this effect was made by the master and approved by the court. We concur in said finding. However, in view of our previous holding as to what constitutes fixtures and appurtenances permanently attached, not only should the Construction Company be allowed a credit of $165 on the filter, but for the entire amount thereof, viz., $499.43. Our previous holding, however, does not affect the amount

found by the master with reference to the item of refrigerators.

Another item which complainant claimed was unjustly charged to the Construction Company was that for painting tables and chairs, and an item of $40.95 for moneys paid by the Hotel Company to its patrons for damage to clothing caused by soft paint on these chairs and tables. Defendant conceded this amount was an improper charge, and the master found it so. No exception was taken to the finding, which finding was approved by the court in its decree.

On the item of cash registers, wherein the court's finding was at variance with that of the master, in view of the evidence in the case, we concur in the finding of the court.

The finding of the master with reference to the "alteration account," which was approved by the court, is not complained of by defendants; in fact, on the hearing, before the matter was referred to the master, defendants stipulated that such matters were not chargeable against the Construction Company, but constituted an obligation for which the Hotel Company was responsible.

The contentions thus far passed upon arose out of the construction and interpretation of contracts "A" and "B," and the acts of the defendants relative thereto. Independently of these two contracts, various controversies have arisen.

The first item to be considered is the interest on Joseph Beifeld's salary. Mr. Beifeld, as president of the Construction Company, was voted a salary, for the year 1906, to be paid if desired, in monthly instalments. His salary, however, was not drawn until November 1, 1907. On October 2nd of that year, Joseph Beifeld directed Jones to draw a check for $550, being the interest at six per cent. on $10,000 for eleven months, namely, from November 1, 1906. This sum was paid to Joseph Beifeld and the Construction Com-

pany charged with said amount. The master found that no contract had been entered into for the payment of interest and that the action of the directors upon same was unwarranted and illegal. The master found that said sum of $550 should be returned to the Construction Company, with interest at five per cent. from October 2, 1907. The court concurred in this finding. There is no proof in the evidence that the Construction Company requested Joseph Beifeld not to draw his salary. Mr. Beifeld maintained that by not drawing his salary the Construction Company was enabled to retire more of its bonds. However that may be, the act of Beifeld was purely voluntary and did not create any obligation on the part of the Construction Company. The finding in the decree on this item will be affirmed.

Pursuant to a resolution passed by the board of directors of the Construction Company, the Hotel Company was voted a rebate of $2,000 on its electric light bill. The master and the court found that such rebate was unwarranted, and disallowed the item. While the defendants predicate this rebate upon the fact that the light of the College Inn building helped illuminate the White City grounds, such argument does not commend itself to the judgment of this court. As observed by the master, if such position were tenable, there is no reason why other concessionaires should not be granted a similar rebate. The court properly found against the defendants on this item, and we concur therein.

Thus far we have disposed of most of the questions in dispute. The determination of the various contentions already enumerated involved a study and a review of the evidence which complainant offered not only in support of the contentions already disposed of, but in support of his right to maintain the bill, and the evidence offered by defendant in denying not only the individual claims, but the right of the complainant to

maintain the bill. The master found, and the court approved said finding, that the complainant was entitled to maintain his bill of complaint. While he found as a fact that no organized conspiracy existed to defraud the Construction Company or to take advantage of it in any way, he further found that the acts of Joseph Beifeld or his employees and the officers of the Hotel Company, with reference to "Contract "A" and "B," were unfair to and resulted in. financial loss to the Construction Company, and that for such matters there should be an accounting.

The master found that mistakes had been made in the accounting between the Construction Company and the Hotel Company, in some instances without the knowledge of Joseph Beifeld; that in many. instances improper charges had been made against the Construction Company or that it had not been paid commissions to which it was entitled, or that it had paid out money on obligations for which it was not liable, to Joseph Beifeld or the Hotel Company upon the order of Joseph Beifeld or with his knowledge; and further, that even though Joseph Beifeld considered his acts in that regard justified, yet as a matter of law he was not justified and that the same thereby constituted a breach of trust. Necessarily, in view of our holding on the respective items brought in issue on this contract, we must concur in these findings of the master. In doing so, however, we are thoroughly impressed with the fact that there was no organized conspiracy as charged, and moreover, that where mistakes and improper charges were made, they were not actuated by any fraudulent or wrongful purpose, but that Mr. Beifeld, in the acts which led to mistakes which brought on this litigation, acted in good faith and in the sincere conviction that he was justified in so doing. The various admissions of the defendants in this case show that certain charges were made against the Construction Company improperly and that thereby

money and property were wrongfully diverted. While the master has found with reference to some of these charges that they were made without the knowledge of Joseph Beifeld, yet the evidence shows that the information leading to the discovery of these mistakes might not have been forthcoming, save for the proceedings herein. The evidence further shows that with reference to several of the items in dispute here and which we have determined in favor of the contention of the complainants, Mr. Beifeld took a determined position to the contrary. There is no question but that the charges of the various items such as bar fixtures, cooking apparatus, filter and items of similar character, against the Construction Company under "Contract A," were made by the authority of Joseph Beifeld and the directors of the Construction Company other than Boyce and the complainant; that by the direction of Joseph Beifeld, no commission was paid upon the sale of milk by the glass and upon wines served at certain banquets, which action was acquiesced in by a majority of the directors of the Construction Company. Beifeld's position was, without question, taken in good faith. But the law is well settled that where an officer or directors of a corporation permit funds thereof to be diverted, even though such action be taken in good faith, the jurisdiction of a court of chancery may be invoked by a stockholder against the corporation and its directors to secure a proper application of such funds or property. The element of fraud need not accompany such act before the jurisdiction of a court of chancery attaches, and the decree of the court which gives redress to secure such relief is not an interference with the internal management of a corporation.

In the case of *Green v. Hedenberg,* 159 Ill. 489, our Supreme Court says (p. 493):

"It is well settled in this State, that where the officers of a corporation wrongfully deal with its property to the injury of stockholders, the latter may main-

tain a bill against the company and its officers for relief against such misappropriation.''

No distinction is made whether such misappropriation is the result of acts founded on bad faith or the result of a sincere belief that such action was justified. The same principle is adhered to in *Voorhees v. Mason*, 245 Ill. 256. In the latter case the right of a stockholder to maintain an action was upheld even though the corporation, the acts of whose directors were subject to inquiry, was a foreign corporation. The following language is applicable to the case at bar (p. 267):

''In Beale on Foreign Corporations (sec. 309) it is said: 'Where proceedings are instituted against officers of a corporation for an accounting and a restoration of property wrongly abstracted by them from the corporation, a bill may be brought in any jurisdiction where the officers are found. * * * The right of the plaintiffs, as stockholders, to compel a restoration by the officers to the corporation is a co-extensive with the right of the corporation itself. Surely the corporation would not be confined to the courts of the State which created it, but could pursue its officers in whatever jurisdiction it might find them, otherwise it would be remediless if those officers remained without the State.' We think, therefore, the fact that the corporation was organized in the State of Delaware and that it may be necessary to interpret and apply the laws of that State is no ground for refusing to entertain jurisdiction where the offending parties reside in this State and the suit is brought in the name of a stockholder, for and on behalf of the corporation. *Mandel v. Swan Land Co.*, 154 Ill. 177; *Bell v. Farwell*, 176 id. 489; Beale on Foreign Corporations, sec. 309.''

We are, therefore, of the opinion that under the facts and circumstances in evidence, the jurisdiction of a court of equity was properly invoked.

Defendants further contend, however, that the jurisdiction of a court of chancery cannot be properly

invoked unless a demand has been made upon the officers and directors of said corporation to take such action as is necessary to restore to the company money or property wrongfully diverted to the prejudice of the corporation and its stockholders. Defendants admit, however, that where the evidence shows that such a demand would be futile, the making thereof is not a necessary condition precedent. The master held in this case. that Joseph Beifeld, by reason of his ownership of a majority of the stock in the White City Construction Company, was enabled to and did control the election of its directors. He further found that where a difference of opinion arose with reference to matters here involved, the majority of the directors adopted the views expressed and the acts suggested by Joseph Beifeld; in fact, that Joseph Beifeld's construction and interpretation of contracts ''A'' and ''B'' prevailed. These findings were approved by the court in its decree, and we are of the opinion that the evidence in the record sustains such finding.

Without impugning the good faith of Joseph Beifeld, but, on the contrary, being of the opinion that he was convinced that he was at all times acting in good faith, it is fair to presume that he did insist upon his acts being approved by the board of directors and did use all his influence in bringing about such approval, and that a request from complainant to take such action as would bring into question the good faith and propriety of the acts of Joseph Beifeld would not have met with a favorable response on the part of the officers and directors of the White City Construction Company. Moreover, if such request had been granted, there is no question that if litigation had followed, it would necessarily have been under the direction of the board of directors, which was favorably inclined to Joseph Beifeld.

In the case of *Appleton v. American Malting Co.,* 65 N. J. Eq. 375, also a suit by a stockholder against the

corporation and its directors to secure relief, the court says (p. 377):

"The statement that a majority of the present board of directors were, and are, among the persons against whom relief is sought by the bill, discloses a situation which relieved the complainants from the duty of applying to them to bring suit in the name of the corporation. It is settled in this state, that such application need not be made when the interest, or bias, of the directors makes it certain that, if it was made, it would be denied; or, if granted, that the litigation following would necessarily be under the direction of persons opposed to its success." (Citing cases.)

So in the case at bar, we believe that the facts and circumstances in evidence disclose a situation which relieved complainant from the necessity of making a demand.

In the case of *Green v. Hedenberg, supra,* the court stated that while the rule in chancery is that before bringing a bill of like character as the bill of complaint herein, a demand must have been made of the proper officers to bring the action, yet where there is a reasonable certainty that such demand would be unavailing, it need not be made. We believe that in the case at bar there was a reasonable certainty that such demand would have been unavailing.

In the case of *Delaware & H. Co. v. Albany & S. R. Co.,* 213 U. S. 435, a similar contention was in controversy by reason of Rule 94 of the United States court of equity rules. That part of Rule 94, the application of which was invoked by the parties corresponding to the defendants in the case at bar, was as follows:

"It (meaning the bill of complaint) must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action."

In passing upon the questions propounded to it un-

der the facts in controversy, Mr. Justice McKenna, speaking on behalf of the court, says (p. 451):

"It was certainly natural enough that a stockholder should seek more earnest representatives, and consider that the directors 'occupied,' to use the language of *Dodge v. Woolsey* [18 How. 331], 'antagonistic grounds in respect to the controversy' as to him. The attitude of the directors need not be sinister. It may be sincere."

While the facts in that case were different from those in the case at bar, yet, in our opinion, the principle announced is equally applicable thereto. We are, therefore, of the opinion that under the facts and circumstances in evidence in the case at bar, no demand was necessary as a condition precedent to entitle complainant to maintain his bill. The finding in the decree, therefore, that the complainant was entitled to maintain his bill will be affirmed. In arriving at this conclusion, we have carefully considered the authorities cited by defendants and do not find them inconsistent with the views herein expressed.

The court found that in the investigation of matters complained of in the bill and on which an accounting was ordered, and in the complainant's procuring details and data of the various transactions involved upon which an accounting herein was ordered, and in the prosecution of this suit, complainant was compelled to and did expend and incurred liabilities for the payment of large sums of money; that as part of said expenditures, and liabilities, complainant has been compelled to and has paid out and become liable to pay out large sums of money to expert accountants, stenographers, attorneys, and that this was for necessary and proper services in and about said investigation and prosecution of this suit; further, that in equity said expenditures and liabilities of the complainant should be and are a first lien and a proper charge to be allowed and paid to the complainant out

of funds which may be saved to or recovered for the said Construction Company by reason of said investigation and prosecution of this suit, which last mentioned funds the court finds are trust funds. And the court ordered and adjudged that said expenditures and liabilities, not including the court costs taxed in the decree, be a first lien upon any and all moneys recoverable by these proceedings; further, that the master take evidence and report same with his conclusions upon the law and evidence, as to the amount of said last mentioned expenditures and liabilities of complainant, including evidence upon the question of what services have been rendered herein by complainant's attorneys and what are and will be reasonable attorneys' fees to be allowed to complainant in the premises on account of services herein by complainant's attorneys. This finding and order in the decree are clearly improper and without authority, and such finding and order in the decree will be reversed.

The Chicago Fire Exhibition Company, while praying an appeal, did not perfect same; accordingly, the finding in the decree against the Chicago Fire Exhibition Company will be affirmed.

In all respects, otherwise than indicated in the course of this opinion, the decree is supported by the evidence. In view, however, of certain findings made by us, the decree will be reversed and the cause remanded with directions for further proceedings in accordance with our findings made in this opinion.

Therefore the decree of the Circuit Court will be affirmed in part and reversed in part and the cause remanded with directions to the chancellor to enter a decree in accordance with the findings announced in this opinion.

*Affirmed in part, reversed in part and remanded with directions.*

## ADDITIONAL OPINION FILED ON PETITION FOR REHEARING.

MR. JUSTICE PAM delivered the opinion of the court.

Counsel for the complainant insist, in their petition for rehearing, that the question of complainant's right to have his expenditures and liabilities for expert accountants, stenographers and attorneys, in and about the investigation and prosecution of this bill, allowed as a first lien upon any and all moneys recoverable by these proceedings, was not fully discussed in the original briefs, and they now strenuously insist that such expenditures have often been allowed in cases like the present one. We have examined the cases in this State cited as having a bearing on this question, as well as many others not cited, and we are of the opinion that all the cases in Illinois come within either the rule, or the exception to the rule, as stated by Mr. Justice Hand, in the opinion filed in the case of *Wilson v. Clayburgh,* 215 Ill. 506. In that case the court said: "It has been repeatedly held in this State that nothing can be allowed and taxed as costs by the clerk or the court. but items of cost designated by the statute to be so allowed and taxed." (Citing authorities.) "The only exception to this rule in this State is in cases brought by trustees for the construction of wills, where a will is so ambiguous as to make it necessary to go into a court of chancery to obtain a construction thereof, in which class of cases the costs of the litigation must be borne by the estate." (Citing authorities.)

Among the cases cited as coming within the exception are several of those cited in complainant's petition for rehearing. The case of *Abend v. Endowment Fund Commission,* 174 Ill. 96, also comes within the exception. The case of *Aldrich v. Maher,* 153 Ill. App. 413, is more nearly like the present case, as will appear by reference to the decision of the Supreme Court in the same case (*Maher v. Aldrich,* 205 Ill. 242); but in

that case, the right to solicitors' fees was denied, upon the authority of *Wilson v. Clayburgh, supra,* and similar cases. We see no reason in anything advanced in the petition for rehearing to change the opinion heretofore filed, as to this question.

Complainant's counsel also contend, as to this provision in the decree, that the White City Construction Company, the party directly interested, neither objected nor excepted to this provision and did not appeal or assign any error thereto, and further, that no assignment of error by Joseph Beifeld could question or put it within the power of the Appellate Court to consider the question as to this provision in the decree. In the case of *Kavanagh v. Bank of America,* 239 Ill. 404, a stockholders' bill was filed by Kavanagh and a receiver appointed. Later, an intervening petition was filed and an order entered upon it which only indirectly effected Kavanagh's interest as a stockholder. He prosecuted an appeal, and his right thereto being questioned on substantially the same grounds as those urged on the petition for rehearing in this case, our Supreme Court, in sustaining his right to appeal, said (p. 406):

"The complainant had a right to appeal because he was a party and the decree affected adversely his interest as a stockholder."

In the case at bar, Joseph Beifeld was a party and also a stockholder, whose interests, as the record shows, would be adversely affected by the provision in this decree. The decision in the case of *Kavanagh v. Bank of America, supra,* is controlling on this contention of the complainant.

Counsel for complainant further contend that defendant Joseph Beifeld did not properly assign error on the ruling of the court on this provision in the decree, and also that such error, even if properly assigned, was waived because of the failure to raise an issue thereon in the printed briefs and arguments.

We are satisfied, from a careful review of the record, that error was properly assigned as to this provision in the decree, and while but slight mention of such error is made in the printed briefs and argument, this point was urged on the oral argument of the case. We are therefore of the opinion that it was properly submitted for our consideration.

Counsel for defendants have also filed a petition for rehearing, in which they request the court to express an opinion as to the allowance of interest on items charged against the defendants. We are of the opinion that the statute provides for the allowance of such interest, as for "money received to the use of another, and retained without the owner's knowledge." Rev. St. ch. 74, Sec. 2 (J. & A. ¶ 6691.) The right to the allowance of interest in such cases was affirmed in *Lehmann v. Rothbarth*, 111 Ill. 185, practically upon this ground, although the statute was not mentioned in the opinion filed in that case. As to the question of costs in the Circuit Court, we see no good reason for disturbing the decree.

The petitions for rehearing will be denied.

*Rehearing denied.*

MR. PRESIDING JUSTICE SCANLAN dissenting: I dissent from that part of the foregoing additional opinion that holds that the appellants Joseph Beifeld and Sherman House Hotel Company did not waive the alleged error in that part of the decree which directs that the expenditures and liabilities incurred by the appellee, William F. Merle, in the prosecution of the suit be taxed as costs in the case. I am of the opinion that the said alleged error was waived by the appellants, and I will at a later date file an additional opinion in support of this dissent.

MR. PRESIDING JUSTICE SCANLAN DISSENTING FROM THE ADDITIONAL OPINION FILED ON THE PETITION FOR REHEARING.

In the opinion filed in this case, we found that the chancellor erred as to the provisions in the decree that William F. Merle recover the expenditures and liabilities incurred by him in the prosecution of this suit out of the funds of the White City Construction Company, recovered by the said company through the said prosecution. In the petition for rehearing filed by Merle, it is strenuously insisted that the provisions in question in the decree were not open to review by this court, for the reason (*inter alia*) that Joseph Beifeld and the Sherman House Hotel Company, in the printed "Brief" and printed arguments filed by them in this court, did not raise or argue the point that the chancellor erred as to the said provisions in the decree and that, therefore, the alleged error was waived by them.

In the additional opinion filed on the petition for rehearing, by the majority of this court, as to this contention of Merle, it is said, "and while but slight mention of such error is made in the printed briefs and arguments, this point was urged on the oral arguments of the case. We are therefore of the opinion that it was properly submitted for our consideration."

After a very careful consideration of the important question raised by the present contention of Merle, I am compelled to dissent from the conclusion of the majority of this court that the said point was properly before this court for review. The point was not made or urged, either in the printed "brief" or the printed arguments of Beifeld and the Hotel Company, and it was therefore waived, and, as Merle did not in any way relinquish the right he gained by reason of the said waiver, this court was not warranted in passing upon the question involved in the said point.

In the printed "brief" filed by Beifeld and the Hotel Company on the petition for rehearing, two answers are made to the present contention of Merle: First, it is argued that the point was not waived, because it was made by counsel for Beifeld and the Hotel Company in the *oral* argument of the case, and also because "this matter may be said to be inferentially covered under the head of 'Costs' in our printed brief;" second, that it is "axiomatic that in a chancery case like the present it is the inherent right of a court (in the absence of a positive prohibition) to decide all questions presented by the record, whether the court is aided by counsel in its (the court's) decision or not;" that the court has the right "to decide any matter in the record to which an assignment of error may properly relate." Taking up these answers in the order in which they are made, the first question to determine is, was the point waived by Beifeld and the Hotel Company?

The following is the printed "brief" filed in this court by Joseph Beifeld and the Sherman House Hotel Company:

"BRIEF.

"The chancellor had no power to decree an accounting in this case, because

I.

"Equity has no jurisdiction to interfere in matters of internal corporate management in the absence of fraud. (Citation of authorities.)

II.

"There is no presumption of fraud arising out of the fact that two corporations, dealing with one another, have common directors, but fraud must be proved and the burden of proof is on the party making the charge. (Citation of authorities.)

III.

"The evidence in this case fails to show fraud on the part of Joseph Beifeld and Sherman House Hotel Company or either of them.

## IV.

"Before a stockholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he must show that he has exhausted all the means within his reach to obtain from the corporation itself the redress of his grievances, unless such a state of facts is alleged and proved, which makes it apparent that such a demand would be futile. (Citation of authorities.)

## V.

"Even though the necessary facts to allow a suit by a stockholder are present, yet the suit will not lie where the complaining stockholder has been guilty of laches, acquiescence or ratification." (Citation of authorities.)

In the printed argument of Beifeld and the Hotel Company, the single point contained in the printed "Brief" is then taken up and very fully argued under the five subheads stated in the printed brief. Following the said argument, and at the conclusion of what is commonly termed the printed brief, under the heading "Costs," appears the following:

"The court decreed that all the costs of this litigation, including masters' fees and stenographic charges, should be assessed against Joseph Beifeld and the Hotel Company. We need to cite no authorities to sustain the proposition that a court of equity has power to apportion costs between the parties where they are each partly successful.

"The record in this case has been lengthened to its present size, by the enormous amount of evidence offered by complainant on the many items and charges found against him. The bar fixtures, the confetti sales, the peanuts, popcorn and cracker jack concessions, the Terrace Tavern and the Tunnel are some of these items.

"We feel that the action of the trial court in assessing all the costs against the defendants is helpful to the defendants in showing the court's utter disregard of the equities of the case. In line with the general idea to 'soak' Beifeld, the court has decreed that he

should pay a large amount by way of costs, for which he was not responsible under any possible theory. We trust that the advantage of the perspective gained in an Appellate proceeding will enable this court to view the whole case in its proper light.''

Rule 21 of this court provides that the printed *brief* should contain a short, clear statement of the points relied upon, and the printed *arguments* should contain the arguments in support of the points made in the printed brief. In effect, this rule is but a statement of the practice that obtains in nearly all appellate courts in this country.

The decisions that directly apply to the question, raised by the contention of Merle, are very numerous. I will first refer to some of the Supreme Court cases that are in point: Errors assigned but not urged in appellant's brief must be considered as waived. *Scott v. Lumaghi,* 236 Ill. 564. ''It is the established practice of this court that where a party to a suit assigns errors which are not argued in his brief, they will be considered as waived.'' *Gordon v. Comr's of Highways of Road Dist. No. 3,* 169 Ill. 510. ''Unless errors assigned are argued they will be considered as waived and will not be passed upon by this court. If the rule were otherwise, a litigant could have his case tried upon one theory in one court and upon a different theory in another court, which method cannot and will not be tolerated.'' *United States Wringer Co. v. Cooney,* 214 Ill. 520. In *Black v. Botzke,* 244 Ill. 200, it was held that ''even though a constitutional question is raised in the court below and proper assignments of error appear upon the record to present the question for review in this court, such question will be deemed to have been waived, and will not be considered by this court if it is not argued in the briefs filed in this court.'' When errors are not insisted upon by the appellant in his opening brief, it is too late to present them in a reply brief. *Schumacher v. Bell,* 164 Ill. 181;

*Morton v. Pusey,* 237 Ill. 26. In *Wetmore v. Henry,*
259 Ill. 80, it was held that a question not raised by an
appellant in his original brief cannot be thereafter
raised by reply brief, oral argument, printed argu-
ment, or on a rehearing; that the point not having been
raised in the original brief was waived. Many other
Supreme Court cases sustaining the foregoing ones
might be cited.

The counsel for Merle contend, that the aforesaid
rules of practice of the Supreme Court prevail also in
the Appellate Courts, and they further insist that by
statute (section 27, ch. 37, Hurd's Rev. St., J. & A.
¶ 2970), the practice in both courts must be uniform.
As a matter of fact, the practice in the Appellate
Courts, in the particular regard, is the same as in the
Supreme Court, and it is entirely unnecessary to here
decide why it is so. Appellate Court cases, almost
without number, might be cited in support of the state-
ment that the practice in the particular regard is the
same in both courts. I will refer to some of these:
*Lorenzo v. Hunter,* 185 Ill. App. 574; *Carlin v. Michi-
gan Cent. R. Co.,* 189 Ill. App. 23; *Forrest v. Roper
Furniture Co.,* 187 Ill. App. 504; *Hem v. Allen,* 179 Ill.
App. 223; *Dumbeck v. Walsh,* 179 Ill. App. 239; *City
of Chicago v. Biel,* 182 Ill. App. 2; *Barr v. Florentine
Alabaster Co.,* 174 Ill. App. 256; *People v. Viskniskki,*
169 Ill. App. 230; *Molner v. Molner,* 186 Ill. App. 233;
*Askins v. Hott,* 188 Ill. App. 235; *Montague & Co. v.
Aygarn,* 164 Ill. App. 596; *Davenport, R. I. & N. W.
Ry Co. v. DeYaeger,* 112 Ill. App. 537; *Acme Harves-
ter Co. v. Chittick,* 132 Ill. App. 611; *Kozowski v. Os-
trowski,* 163 Ill. App. 199; *Johnson v. Royal Neighbors
of America,* 159 Ill. App. 269; *Barth v. Hanna,* 158 Ill.
App. 20; *Swenson v. Doyle,* 158 Ill. App. 60; *Kemp-
ton's Estate v. Funk,* 158 Ill. App. 100; *Frenci v. Taze-
well Coal Co.,* 157 Ill. App. 477; *St. John v. Village of
North Utica,* 157 Ill. App. 504; *Linnberg v. City of
Rock Island,* 157 Ill. App. 527; *Foss v. Hawley,* 154 Ill.

App. 349; *Town of Big Grove v. Town of Fox*, 89 Ill. App. 84; *Interstate Building & Loan Ass'n v. Ayers*, 71 Ill. App. 529; *Equitable Powder Mfg. Co. v. Cleveland, C., C. & St. L. R. Co.*, 155 Ill. App. 265; *Macgregor v. Malarkey*, 96 Ill. App. 421; *Illinois Cent. R. Co. v. Heisner*, 45 Ill. App. 143; *Summerville v. Penn Drilling Co.*, 119 Ill. App. 152; *Richardson v. Benes*, 115 Ill. App. 532; *Illinois Cent. R. Co. v. McMillan*, 115 Ill. App. 600; *Brown v. Burley*, 168 Ill. App. 114; *Crawford Locomotive & Car Co. v. Galesburg Malleable Castings Co.*, 168 Ill. App. 405.

It is clear that the rules of waiver, laid down in the cases heretofore cited by me in support of my position, do not apply in all instances. An Appellate Court, of its own motion, and at any stage of the proceedings, may interpose the objection of want of jurisdiction over the subject-matter of the suit. Such an error, of course, the parties cannot waive. It is equally true that in cases where public rights and interests are involved, the court may decide questions not presented by the litigants. *Heppes Co. v. City of Chicago*, 260 Ill. 506, is a case in point. There it was held that the court could decide questions not raised in the briefs and arguments of either party, for the reason that public rights and interests were involved, and the decision of the court might constitute a precedent which would imperil such rights, but the court in that case also, in the following plain and significant language, announced the rule that governs cases like the present one: "*Where adult litigants are concerned, and private rights, only, are involved, the proper practice is to decide such questions as they see fit to present.*" The rule thus announced has been quoted with approval by this branch of the Appellate Court in the late case of *Steele v. Lamb*, 184 Ill. App. 577 (opinion by Mr. Justice Fitch). Other cases might be cited to which the rules of waiver that govern cases like the present one do not apply, but in any of these cases

there will be found something in the nature of the right involved, or some legal disability in one or more of the parties to the proceedings, that takes it without the general rule.

The point that the majority of this court holds was not waived is, that the chancellor erred in decreeing "that William F. Merle recover the expenditures and liabilities incurred by him in the prosecution of this suit out of the funds of the White City Construction Company, recovered by the said company through the said prosecution." It is conceded—as it must be—that this point is not made in the printed "Brief"—the place where it belongs under Rule 21 of this court. But one point was made in the "Brief," viz.: *"The chancellor had no power to decree an accounting in this cause."* Five reasons were assigned in support of this point. But, aside from the fact that the point was not made in the printed "Brief," it is clear that it was not raised and urged even in the printed argument. In fact, the counsel for Beifeld and the Hotel Company practically concede that this is so, for their sole claim is, that "this matter may be said to be inferentially covered under the heading of 'Costs' in our printed brief." If points could be thus made, an appellate court might be compelled to search the entire record in every case, for it would be very easy for an appellant to *inferentially* question the entire record. Such a practice would not only place an unwarranted and intolerable burden upon the appellate court, but it would also compel an appellee to defend the entire record. It is not the duty of a reviewing court to search the record for error, nor is an appellee required to defend any part of the record that has not been properly attacked by the appellant. All presumptions are in favor of the judgment, and if the appellant wishes an appellate court to pass upon any action of the trial court, the burden is upon him, not only to point out specifically to the appellate court the al-

leged error, but to show wherein the trial court erred. *Duggan v. Ryan,* 211 Ill. 133; *Ladd v. Ladd,* 175 Ill. App. 101; *Jones v. Bean,* 136 Ill. App. 545. Many other cases to the same effect might be cited.

It follows, therefore, that even if the language under the heading "Costs" could be reasonably given the interpretation suggested by counsel for Beifeld and the Hotel Company, nevertheless, this would not save the point. But it is clear, that by no reasonable interpretation of the said language can it be held that the point in question was made, or intended to be made, under the heading "Costs." The point was an important and unusual one; the counsel for Beifeld and the Hotel Company were able and experienced, and it is idle to argue that they intended, by the said language, to raise and urge the point *that the chancellor erred in decreeing "that William F. Merle recover the expenditures and liabilities incurred by him in the prosecution of this suit out of the funds of the White City Construction Company, recovered by the said company through the said prosecution."* No authorities are cited under the said heading that bear upon the particular point. The said language occurs after the conclusion of the arguments of the counsel in support of the single point raised in the printed "Brief," and it appears to be in the nature of an argument in support of the claim that is constantly made by the counsel in the printed arguments that the chancellor utterly disregarded the equities of the case in decreeing an accounting. In fact, counsel under the said heading state: "We feel that the action of the trial court in assessing all the costs against the defendants is helpful to the defendants in showing the courts utter disregard of the equities of the case." If it had not been for the fact that counsel for Beifeld and the Hotel Company, on the oral argument of the case, complained of the action of the chancellor as to the matter in question, it is certain that this court could not

have known of the said point. This being so, how can it be reasonably urged that the point was even inferentially made under the heading "Costs?"

Under the authorities heretofore cited, it is plain that the point was not saved merely because the counsel for Beifeld and the Hotel Company made it in their oral argument to this court.

It is very evident, however, from the printed brief filed in this court by the counsel for Beifeld and the Hotel Company, on the petition for rehearing, that the argument upon which they rely, in answer to the contention of Merle, is that the point in question was properly preserved by exceptions and by assignment of errors, and that this court, therefore, had the discretion to consider it, even if it was not urged in the printed brief or printed argument. While the opinion of the majority in this matter is not predicated upon the theory advanced by the counsel for Beifeld and the Hotel Company that this court has the discretion in the present case to consider the point, even though it was not made or urged in the printed brief,— in other words, that this court, in its discretion, may waive the rules of practice governing the said point; nevertheless, in my judgment, the action of the majority of this court in passing upon the said point could not be justified, even if it were predicated upon the said theory. In support of this last mentioned argument, counsel cite the following Illinois cases: *Griffith v. Sutherland*, 53 Ill. 195; *Wolverton v. Taylor & Co.*, 54 Ill. App. 380; *Nordhaus v. Vandalia R. Co.*, 147 Ill. App. 274; *Crabb v. Young*, 146 Ill. App. 48; *Wilkening v. Alton Baking & Catering Co.*, 165 Ill. App. 468; *Henion v. Pohl*, 113 Ill. App. 100; *City of Centralia v. Knash*, 183 Ill. App. 588; *Cook v. Moulton*, 64 Ill. App. 429; *Purington v. Akhurst*, 74 Ill. 490; *Leathe v. Thomas*, 109 Ill. App. 434; *West Chicago St. R. Co. v. Reddy*, 69 Ill. App. 53; *Chicago & E. R. Co. v. Binkopski*, 72 Ill. App. 27; *Challacombe v. Highways Com'rs Cen-*

*tral Tp.,* 161 Ill. App. 115; *Pratt v. Trustees of Baptist Soc. of Elgin,* 93 Ill. 475.

In the first three of these cases the judgments were affirmed and there was no necessity for the appellees to challenge the action of the reviewing courts in considering points that had not been properly raised in the printed briefs and arguments. In the next two cases *the appellees* failed to file briefs, and it was said that the judgments might, therefore, be reversed and the causes remanded *pro forma,* under the rules of the Appellate Courts of the Third and Fourth Districts, but that the court had the right, under the said rules, to decide the cases upon the merits, if upon an examination of the records they were of the opinion that they were proper cases for the exercise of that right. The decisions in these two cases turned upon special rules adopted by the Appellate Courts of the Third and Fourth Districts.

In *Poznanski v. Szczech,* 71 Ill. App. 670 (opinion by Mr. Justice Gary), it was held that the special rules referred to in the two cases just mentioned, were not in force in this district at that time. Nor are they in force now. In *Henion v. Pohl, supra,* the court said that both the appellant and the appellee had failed to comply with the rules of the court of the Second District, but that nevertheless the case would be considered on its merits. The decree of the *nisi prius* court was *affirmed.* In *City of Centralia v. Knash, supra,* the *appellee* failed to comply with the rules of court of the Fourth District. The judgment of the trial court was *affirmed.* In *Cook v. Moulton, supra,* it was held that an appellant in a cause which is reversed on a cross-error is not estopped from assigning for error upon a subsequent appeal the same errors assigned by him upon his first appeal, and from insisting upon and arguing such errors, even though upon his first appeal he waived them by failing to argue them, when upon such former appeal, there was no

decision upon the merits of the assigned errors. In *Purington v. Akhurst, supra,* the court said that if a party desires to urge a ground for reversal, he should state the same in his opening argument so as to give the other party a chance to reply, but if it is specially assigned for error, the court could not disregard it. This case has never been cited on that point, and it must be disregarded because of the many subsequent contrary decisions of the Supreme Court on the same question. In *Leathe v. Thomas, supra,* the court said that while a certain error assigned was not *pressed in argument,* the court would consider the same. The judgment was *affirmed.* In *West Chicago St. R. Co. v. Reddy, supra,* all that the court held was that it was not necessary to cite authorities in support of an error assigned and urged in brief before the Appellate Court would consider the point made. In *Chicago & E. R. Co. v. Binkopski, supra,* the judgment was reversed for errors assigned and properly urged, and the court also passed upon a certain instruction in reference to which the appellant had not urged error in his brief, but the court justified its action in this regard on the ground that it tended to avoid error on a second trial of the cause. No harm was done to the appellee by this action of the court. The question now before us was not before the court in *Challacombe v. Highways Com'rs Central Tp., supra.* Mr. Justice Shirley, who delivered the opinion of the court in that case, also delivered the opinion of the court in *Equitable Powder Mfg. Co. v. Cleveland, C., C. & St. L. R. Co., supra,* in which it was held that questions not raised in the original brief are deemed waived and will not be considered when raised for the first time in the reply brief. In the case of *Pratt v. Trustees of Baptist Soc. of Elgin, supra,* the court held that, under the particular facts of that case, they would consider a point that went to the merits of the case, raised for the first time by the appellant in his reply brief, after allowing to

the opposite side full opportunity to be heard upon it. In that case the appellant was seeking to protect the estate of a deceased person. The only time that that case has been referred to on the point in question was in *Schumacher v. Bell, supra,* where it is cited as an authority in support of the rule that when errors are not insisted upon by the appellant in his opening brief, it is too late to present them in a reply brief. *Love v. Dick,* 177 Ill. App. 98, does not sustain the contention of the counsel. Mr. Justice Barnes, who delivered the opinion of the court in that case, also wrote the opinions in several of the cases that I have cited as holding that errors not argued by the appellant in his brief would be considered as waived.

In none of the cases cited by counsel for Beifeld and the Hotel Company, and in none of the Illinois cases that have come to my notice, did the court pass upon and decide a point (one that might be waived) that had not been presented by the appellant in his printed brief, *where it appeared that the right of the court to do so had been challenged by the appellee.*

Counsel for Beifeld and the Hotel Company seem to assume that the rule in question does not apply to chancery cases, but an examination of the Supreme Court and Appellate Court cases cited by me in support of my position will show that this assumption is erroneous.

It is not contended that any of the parties to this cause were under any disability, and there is absolutely nothing that would take the case without the general rule, as, clearly, the point in question is one that Beifeld and the Hotel Company might waive. Under the facts, and under the settled law applicable to the same, I am of the opinion that Beifeld and the Hotel Company waived the said point. Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment or waiver of such right. The doctrine is as old

as the law itself, and it pervades the entire procedure —criminal as well as civil. The particular rule of waiver that governs the present question was not created, as counsel for Beifeld and the Hotel Company seem to assume, for the mere purpose of lessening the work of the judges in appellate courts. When Beifeld and the Hotel Company waived the right to make the point in question, Merle thereby was relieved from defending the record, as to the point in question, and this court is not warranted in taking away this right from Merle, without his consent, express or implied.

But aside from the fact that Merle acquired a right by reason of the waiver that this court is not warranted in taking away from him without his consent, the rule in question is of such a character, that, if it is to be enforced at all, it must be enforced as to all litigants who come within its provisions, for it is idle to argue that this court may enforce it as to some and not as to others without doing injustice to any one. If the rule can be ignored in the present instance, then any appellant who comes to this court in the future may properly insist that the rule be not enforced as to him.

This dissent is not intended as a plea for technical rules. The particular rule that applies to the present question is a necessary and wholesome one, but, were it otherwise, it is the rule, and evenhanded justice to all litigants required that it be enforced in the present instance. If the rule can be enforced in the manner contended for by the counsel for Beifeld and the Hotel Company, then it is a bad rule and it should be revoked or modified.